# STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

# Robert L. PERRY, Defendant-Appellant.

Supreme Court

*No. 84–875–CR. Argued October 29, 1986.—Decided March 6, 1987.*

(Also reported in 401 N.W.2d 748.)

For the plaintiff-respondent-petitioner the cause was argued by *William L. Gansner*, assistant attorney general, with whom on the briefs was *Bronson C. La Follette*, attorney general.

For the appellant there was a brief by *Mark A. Eisenberg* and *Eisenberg Law Offices, S.C.* Madison, and oral argument by *Mark A. Eisenberg*.

HEFFERNAN, CHIEF JUSTICE. This is a review of a decision of the court of appeals[1] which reversed a judgment of the circuit court for Rock county, Edwin C. Dahlberg, Judge, and directed that Robert L. Perry (Perry) have a new trial because substantial portions of the trial transcript were missing. We affirm the decision of the court of appeals.

The facts are not in dispute. Perry was tried by a jury in Rock county and was convicted of burglary, robbery, and injury by conduct regardless of life in

---

[1]*State v. Robert L. Perry*, 128 Wis. 2d 297, 381 N.W.2d 609 (1985).

violation of secs. 943.10(1)(a), 943.32(1)(a), and 940.23, Stats. He was sentenced to a term of imprisonment. On his appeal to the court of appeals, in addition to objecting to the defective transcript, he claimed that he had been improperly ordered to be imprisoned for a term of ten years when in fact, under the oral sentence imposed by the trial judge, he was subject to but a total term of five years.

Because the court of appeals addressed only the alleged inadequacy of the transcript and found defendant's claim sufficient to warrant a new trial, it did not consider the sentencing issue raised in the defendant's appeal. Because we conclude that the question of which pronouncement of sentence is controlling, the oral sentence or the sentence appearing in the judgment, is one which is likely to recur, we address it, although, under the teachings of *Neely v. State*, 89 Wis. 2d 755, 279 N.W.2d 255 (1979), Perry, as a party not aggrieved by the decision of the court of appeals, does not have the *right* to have an issue reviewed. We do so, however, in a subsequent portion of this opinion under the standards of *State v. Wyss*, 124 Wis. 2d 681, 370 N.W.2d 745 (1985), which permit this court in its discretion to address all prior rulings to determine whether they are correct.

The initial issue, however, concerns the adequacy of the trial transcript for a meaningful appellate review.

Perry was convicted after an eight-day jury trial. Perry's trial took place on May 4–7 and 10–13, 1983. During the morning sessions on the final two days of trial, a substitute court reporter recorded the proceedings. This reporter moved to Manitowoc, but left the notes from Perry's trial in Rock county. When a trial transcript was ordered, the regular court reporter

mailed the notes to the substitute reporter to transcribe. The notes were lost in the mail. When the postal service finally located them, they were incomplete and in a jumbled mess. When the notes were finally pieced together, significant portions of the transcript for those days were missing.

According to the trial court docket entries, the substitute reporter's notes should have contained the testimony of eleven defense witnesses, arguments on motions, the admission of exhibits, the prosecutor's closing argument, and the trial court's instructions on closing srgument. Instead, the transcript from the notes that were found contains the complete testimony of four witnesses and the partial testimony of five other witnesses. The entire testimony of two witnesses is missing. Only fragmentary portions of the following were recovered: The argument on motions, discussion on stipulations, the in-chambers conference on exhibits, an offer of proof from a defense witness, the prosecutor's closing argument, and the instructions to the jury. In addition, the notes yielded several unidentified and random portions of the proceeding that could not be pieced together.

Perry brought a postconviction motion for a new trial, alleging several errors, including the allegation that deficiencies in the trial transcript effectively denied him the right to appeal his conviction. Judge Dahlberg denied Perry's motion, stating:

> "THE COURT: Well, gentlemen, I am prepared to rule on the matter today. The Court presided over the trial. It was a nine-day trial. The portion of the transcript which was mailed by Ms. Smudde to Ms. Tatlock was lost in the mail and subsequently recovered in somewhat less than ideal fashion.

" . . . .

"I reviewed the transcript that has been prepared by Ms. Tatlock from her notes. It substantially covers all of the proceedings as I recall them. Certainly, with a little more work upon the transcript, it could be put in even more orderly form than the reporter now has it.

"I am satisfied that the transcript—albeit, it is not a perfect transcript—is a sufficient transcript to provide the appellate court with a basis of reviewing the entire record in the matter. And I so find at this time. ..."

At the time of this ruling, approximately one year had passed since trial. Perry appealed to the court of appeals. The court of appeals reversed the judgment of conviction. Because it reversed, it did not consider it necessary to resolve the sentencing question.

■ While the court of appeals concluded that the transcript was inadequate, we do not consider that determination a finding of fact or a determination by the court of appeals that there was an erroneous factual determination made by the trial court. Whether a transcript is sufficient under appropriate standards to serve its necessary purpose on appeal is ultimately a matter of law for the appellate courts. Moreover, the transcript being a "document," it may be evaluated as well by the appellate court, perhaps better than by the original tribunal. *Delap v. Institute of America, Inc.*, 31 Wis. 2d 507, 143 N.W.2d 476 (1966). Whether a transcript is sufficient may be determined by an appellate court *ab initio*. Moreover, the method by which a court at any level ought to make this determination is ultimately within the procedural and supervisory jurisdiction of this court.

Accordingly, we have accepted the court of appeals decision to examine the methodology by which a court may determine the adequacy of a transcript.

While the procedure by which the adequacy of a transcript for appeal purposes may well be addressed in general terms by rule, whether a particular transcript is sufficient for an appeal is dependent upon the nature of the case, the nature of the claim of error, the passage of time from the date a transcript originally was, or should have been, prepared, and whether the trial was to the court or to a jury.

As a matter of Wisconsin constitutional law, the right to an appeal is absolute: "Writs of error shall never be prohibited, and shall be issued by such courts as the legislature designates by law." Wisconsin Const., art. I, sec. 21(1). Since the reorganization of the Wisconsin court system in 1977, the court so designated is the court of appeals, which has initial appellate jurisdiction as set forth in Wis. Const., art. VII, sec. 5(3). The legislature has specifically stated, "A writ of error may be sought in the court of appeals." Section 808.02, Stats. Thus, the right of appeal to the court of appeals is constitutionally guaranteed in the State of Wisconsin.

The importance of a transcript is emphasized in this court's rules of appellate procedure, *e.g.*, Rule 809.16(5):

> "If a reporter fails to file timely a transcript, the court may declare a reporter ineligible to act as an official court reporter in any court proceeding and prohibit the reporter from performing any private reporting work until the overdue transcript is filed."

Supreme Court Rule 71.01 provides that all testimony in all courts of record shall be recorded verbatim, as shall be all opening statements and closing arguments when requested. Sentencing proceedings are also to be reported where the penalty may exceed a $500 fine or six months incarceration.

Thus, a thread runs through our entire jurisprudence that there not only be a right to appeal, but that the appeal be a meaningful one. In order that the right be meaningful, our law requires that a defendant be furnished a full transcript—or a functionally equivalent substitute that, in a criminal case, beyond a reasonable doubt, portrays in a way that is meaningful to the particular appeal exactly what happened in the course of trial.

Functionally, the appeal brought from the circuit court is the equivalent of the writ of error. Basic to a criminal appeal is the statement of the errors that an aggrieved defendant alleges were committed in the course of the trial and a showing that such errors (or error) were prejudicial. Any failure of the appellate process which prevents a putative appellant from demonstrating possible error constitutes a constitutional deprivation of the right to appeal.

The usual remedy where the transcript deficiency is such that there cannot be a meaningful appeal is reversal with directions that there be a new trial. *Hardy v. United States*, 375 U.S. 277 (1964); *Herron v. United States*, 512 F.2d 439 (4th Cir. 1975); *Fowler v. United States*, 310 F.2d 66 (5th Cir. 1962); *United States v. Taylor*, 303 F.2d 165 (4th Cir. 1962); *United States v. Upshaw*, 448 F.2d 1218, cert. den. 405 U.S. 934 (1972); *Commonwealth v. Banks*, 428 Pa. 571, 237 A.2d 339 (1968), dissenting opinion of Roberts, J.,

accepted by the Pennsylvania Supreme Court in *Commonwealth v. Shields*, 477 Pa. 105, 383 A.2d 844 (1978).

It is equally clear that not all deficiencies in the record nor all inaccuracies require a new trial. An inconsequential omission or a slight inaccuracy in the record which would not materially affect appellate counsel's preparation of the appeal or which would not contribute to an appellate court's improper determination of an appeal do not rise to such magnitude as to require *ipso facto* reversal. Error in transcript preparation or production, like error in trial procedure, is subject to the harmless-error rule.

The state does not contend, however, that a defendant is not entitled to a new trial in the event that the transcript is so deficient that there cannot be a meaningful appeal.

The state asserts that the record here is substantially complete and it relies entirely on the trial judge's conclusion that the "transcript ... is a sufficient transcript to provide the appellate court with a basis of reviewing the entire record in the matter." The state acknowledges that the court of appeals concluded that Perry had shown a "colorable need" for a complete transcript. The defendant takes the position that, once he shows a "colorable need," the burden falls on the state to demonstrate that the extant portion of the transcript or an available alternative will allow a meaningful appeal on the grounds urged.

The posture of this case requires the delineation of the duties of the court and of the obligation and burdens on the parties in this and other cases. The court of appeals in *State v. DeLeon*, 127 Wis. 2d 74, 377

N.W.2d 635 (1985), a case in which a small portion of the reporter's notes were lost, embarked upon the analysis of the appropriate procedure to be utilized. The initial requirement under *DeLeon* is for the appellant[2] to assert that the portion of the transcript that is missing would, if available, demonstrate a "reviewable error." P. 80. Alternatively, the *DeLeon* court refers to this as "a facially valid claim of error." P. 80. By this terminology, we conclude that the court refers to an error which, were there evidence of it revealed in the transcript, might lend color to a claim of prejudicial error. In the instant case, *i.e., Perry*, the court of appeals refers to a "'colorable need' for a full, accurate transcript." 128 Wis. 2d at 307. We believe the terms to be synonymous in meaning.

*DeLeon* then places a duty upon the court to determine whether the missing portion of the record can be "reconstructed." *DeLeon* would entrust this decision to the discretion of the court and states that the court should look to such factors as the length of the missing portion in relation to the entire transcript, the time lapse from trial to the discovery of the hiatus in the record, and the availability of witnesses and counsel to reconstruct the record. If, after considering these factors, the court concludes that the record cannot be reconstructed, it may find "as a matter of law" that reconstruction is "insurmountable" (127 Wis. 2d at 81), and it then has the obligation to order a new trial.

---

[2]While in this criminal case it is the defendant who seeks to appeal, it very well could be the plaintiff in either a criminal or civil case. Accordingly, we refer to a party who seeks to appeal as the appellant.

*DeLeon*, if reconstruction may be possible, places the burden on the appellant to summarize the record and prepare an affidavit incorporating the evidence as reconstructed by the appellant, to which summary the state (or respondent in a civil case) may propose amendments and make objections.

If there is no disagreement, the parties may then proceed on an agreed statement of facts. If disagreement remains, *DeLeon* would then allow the court, based on its own recollection, trial notes, consultation with counsel, affidavits, or recall of witnesses, to "settle and approve" (p. 81) the state of the record. *DeLeon* emphasizes that this procedure does not allow for speculation, but that the transcript must be established in accordance with the burden of proof required in the case, *i.e.*, in a criminal case, beyond a reasonable doubt. If the court cannot reach that degree of certainty, it must reverse and order a new trial.

The court of appeals in the instant case recognized *DeLeon* but declined to follow its suggested procedure, stating, *"DeLeon* should be limited to its facts." 128 Wis. 2d at 301. Obviously, in its outcome, it should be so limited, but the essence of *DeLeon* is its methodology, which is as appropriate for this case as it was for *DeLeon*.

It is true, however, that the factual predicate in this case is different from that of *DeLeon*. But that is not to validate the assertion that *DeLeon* is *sui generis* and its methodology is not applicable to any other case. *DeLeon* places great emphasis on court discretion, and it is in the methodology of exercise of that discretion, of which the facts are a principal component, that *DeLeon* can be applied to a broad spectrum

of cases. Thus, although the state asserts that the court of appeals in this case "summarily rejected" *DeLeon*, we view that as an erroneous characterization of what the court of appeals in fact did.

Two basic holdings emerge from the court of appeals decision in this case:

1. That Perry did not waive his right to seek a new trial for failure to use the procedure of Rule 809.15(3).[3]

2. That Perry made a showing of a colorable need for a complete transcript because he alleged prosecutorial misconduct, the existence of which could be determined only from a complete record, which would include the closing arguments of the prosecutor.

Neither in *DeLeon* nor in this case did the court of appeals require, at risk of waiver, the procedure of Rule 809.15(3). Moreover, as pointed out above, we see no difference in substance between the language of *Perry* utilized by the court of appeals, in respect to "colorable" claim or need, and the language of *DeLeon*—a claim of "reviewable error" or a "facially valid claim of error." Neither case requires that there be an initial showing of "prejudicial error." Obviously, all that need be alleged is that there is some likelihood that the missing portion would have shown an error that was arguably prejudicial.

In effect and in result, *Perry* followed the rationale and methodology of *DeLeon*. It required the allegation of error in terms of identical meaning. It

---

[3]"**Defective record.** A party who believes the record, including the transcript of the reporter's notes, is defective or does not accurately reflect what occurred in the trial court may move the court in which the record is located to correct the record."

concluded, after an examination of the facts, that the transcript, on the basis of the information made available, could not be "reconstructed." It considered the factual posture of the case in terms suggested by *DeLeon:* The time lapse from date of trial to the discovery of the omissions from the transcript, and the length of the missing portion in relation to the entire transcript. In addition, it noted that there were new counsel on appeal. Hence, counsel on appeal could not stipulate to their recollection of trial events. It additionally found that trial counsel were not available. It also considered that this case, unlike *DeLeon,* was a jury case and, even were there an attempt at reconstruction, there might be some impingement on the jury's function of determining credibility.[4]

It appears to this court that the court of appeals in *Perry* indeed followed *DeLeon,* but declined to list the additional *DeLeon* procedures once it reached the conclusion that the record could not be reconstructed.

*DeLeon's* methodology is a reasonable approach to a determination of whether the failure to have a complete transcript requires a new trial. The *Perry*

---

[4]We do not see this as a sufficient point of differentiation between a jury trial and a bench trial where a deficient transcript is urged. The judge's recollection may be significant in the transcript reconstruction in either case. In terms of whether there was sufficient evidence, *i.e.,* for either a jury or bench trial, the test is the same and only varies with the greater weight given to jury determinations. In either case, the question is whether the transcript reveals evidence sufficient to support the particular factfinder. The methodology does not change. The judge's recollection may be used in either case, not because he or she is a factfinder, but because he or she is a trained observer who has been present at the trial. The recollections of counsel are also relevant for the same reason.

court's truncation of *DeLeon* at a point when subsequent steps suggested in *DeLeon* are obviously fruitless is equally reasonable. We conclude that the court of appeals in this case did not reject *DeLeon*, but decided that, on the basis of differing facts, it could in its discretion dispense with the *DeLeon* procedures that were superfluous and meaningless in this case.

We have stated above the absolute and constitutional necessity for providing a criminal defendant a transcript that will make possible a meaningful appeal. An appellate court in some states, to denominate its function, is called a court of errors. An appellate court cannot function if it has no way to determine whether error has been committed. In most instances, a transcript is required for appellant's counsel to locate error and for an appellate court to verify or disprove it. Frequently, plain error—error usually not pinpointed in the course of trial—can only be discovered and proved by a transcript. Moreover, whether error is prejudicial or harmless is usually determinable only in the context of the entire record. While these factors are always relevant and are to be weighed in the exercise of the court's discretion, they are of particular importance when the error claimed, prosecutorial misconduct, would likely be manifested in the prosecutor's closing argument, a portion that is missing here. Additionally, where counsel on appeal is new to the case, it is the transcript which must be his principal guide.[5]

---

[5]We do not suggest a *per se* rule that, whenever there is new counsel, the failure to have a complete transcript always requires a new trial. Such a rule would lend itself to manipulation. Here, although the fact of new counsel has weight in the scales of the exercise of discretion, it is but one factor.

The language of *Hardy v. United States*, 375 U.S. 277 (1964), is instructive. Justice Goldberg in a concurring opinion stated:

> "[T]he most basic and fundamental tool of [an appellate advocate's] profession is the complete trial transcript, through which his trained fingers may leaf and his trained eyes may roam in search of an error, a lead to an error, or even a basis upon which to urge a change in an established and hitherto accepted principle of law." 375 U.S. at 288.

One commentator, in stressing the importance of the transcript in appellate practice, stated:

> "[N]ew counsel is operating under serious handicaps .... Recollections and notes of trial counsel ... are apt to be faulty and incomplete. Frequently, issues simply cannot even be seen—let alone assessed—without reading an accurate transcript. Particularly is this true of questions relating to evidence or to the judge's charge; and it may also apply to many other types of questions. Moreover, the actual record (if appellate counsel could have it to inspect) might disclose issues substantial enough to constitute probable or possible 'plain error,' even though trial counsel was not aware of their existence." B. Boskey, *The Right to Counsel in Appellate Proceedings*, 45 Minn. L. Rev. 783, 792–93 (1961).

Despite these somewhat overblown commentaries in respect of the necessity of a complete transcript, a complete transcript is not always a necessity for a meaningful appeal. The *DeLeon* standards, which we approve as guides to discretion, specifically recognize the appropriateness and constitutional sufficiency of an accurate reconstruction of the contents of a tran-

script, or of an affidavit in respect to omitted testimony, which may be accepted by counsel. We stress, however, that, if reconstruction is attempted, the court must carefully review the reconstruction effort and determine, in a criminal case, that the reconstruction is correct beyond a reasonable doubt.

In the instant case the trial judge, who did not have the benefit of the *DeLeon* reasoning, thought that the fragmentary transcript was sufficient; but his determination was not an articulated rationale that showed the exercise of discretion to reach the conclusion that the transcript in its incomplete form was sufficient "beyond a reasonable doubt" to provide a basis for a meaningful appeal.

Rather, he concluded that he was "satisfied" that the transcript was sufficient to furnish a basis for review by an appellate court. It is acknowledged that one-eighth of the proceedings, in terms of trial time, are missing, that two witnesses' testimony is entirely absent, and the closing arguments are not to be found. In light of these undisputed facts, it is difficult to accept the conclusion of the trial judge when he has failed to state any of the factors that would support his discretionary determination, particularly when there has been a showing that there was a colorable claim of prosecutorial misconduct. Some evidence, albeit not highly probative of misconduct, allegedly appeared in the existing portions of the transcript, and the segment of the proceedings where prejudicial conduct was likely to manifest itself—the closing arguments—was not available.

The court of appeals, as we have said it appropriately may do, looked at the question *ab initio* and expressed its agreement with appellant's counsel that

"[s]ince a substantial part of the State's final argument is missing ..., it is impossible to determine whether other examples of prosecutorial misconduct occurred." P. 304. We agree with the summary of the court of appeals:

> "Appellant has done everything that reasonably could be expected in order to perfect his appeal. Under the present state of things, his contentions are unreviewable. He has established a colorable need for the full transcript, and to deny him a new trial under such circumstances would amount to a denial of his right to appeal." *Perry* at 307.

We conclude as a matter of law that the transcript is insufficient. It cannot be stated beyond a reasonable doubt that it constitutes a sufficient transcript of the trial.

We emphasize that the only burden on the appellant, once he or she has discharged the duty to procure whatever transcript is available and demonstrates that a portion is missing, is the burden to show a "colorable need" as variously expressed in *Perry* and *DeLeon*. He does not need to demonstrate or assume the burden of showing that the error alleged is prejudicial. Yet, it must be clear that the error cannot be of such a trivial nature that it is clearly harmless. The error must be of potential substance and, depending upon the state of the record could it be produced, arguably prejudicial. These considerations should be articulated by the court in the individual case. The claim should be more than frivolous and the lacunae of the record should be of such substance as to lend credence to the claim that error was arguably prejudicial had the missing segment been produced. The

court's duty is to make sure that the defendant's right to a fair and meaningful review is not frustrated by transcript errors or omissions. This decision is a discretionary one, which this court will support if due consideration is given to the facts then apparent, including the nature of the claimed error and the colorable need for the missing portion—and to the underlying right under our constitution to an appeal.

Trial judges and appellate judges on review are enjoined to utilize the principles and procedures set forth in *DeLeon*. Because we conclude that the court of appeals in this instance followed the rationale of *DeLeon*, carefully articulated the facts and related them to the underlying propositions of law, and reached a decision fully supportable—that the record could not be reconstructed—we affirm its exercise of discretion and its mandate to reverse for a new trial.

As an additional argument, the state contends that the appellant's claim cannot be considered because there has been no recourse to Rule 809.15(3). That rule provides:

> **"Defective record.** A party who believes the record, including the transcript of the reporter's notes, is defective or does not accurately reflect what occurred in the trial court may move in which the record is located to correct the record."

The law, however, does not require the doing of a futile act. It is uncontroverted that the court could not "correct the record" in the present case.

This rule is designed to permit a party to ask the judge to direct that the record conform to the events that occurred at trial. It is an efficacious remedy for the correction of names and other matters that may

be either of trivial or substantial consequence. There is no intimation, however, that this rule must be employed in lieu of a postconviction motion or a motion for a new trial. When the claim is that the existing transcript has such substantial omissions that the constitutional right to appeal is in jeopardy and a motion under Rule 809.15(3) has been brought, the trial judge, as in this case, could not by order have corrected the record or have filled in the gaps without a more substantial proceeding—the procedures mandated under *DeLeon* and herein. Rule 809.15(3) procedure is inappropriate and ineffective to correct the transcript under the circumstances present here.

The *DeLeon* court recognized that the Judicial Council comments (*see, DeLeon,* 127 Wis. 2d at 78) stated that Rule 809.15(3) was designed for "*correction of any alleged error in the transcript*" and was not helpful in dealing with the missing transcript problem in the case before it. Instead, it followed the admonitions of the Judicial Council comments and the Federal Rules of Appellate Procedure generally and evolved the *DeLeon* procedure from Federal Rule of Appellate Procedure 10(c) and from the rule implementation utilized in *Cole v. United States,* 478 A.2d 277, 280–85 (D.C. App. 1984). Thus, the *DeLeon* rule modeled on *Cole* is an entirely separate procedure, which does not contemplate the motion permitted in Rule 809.15(3).

Moreover, we do not think Rule 809.15(3) to be mandatory even were it directed to the omissions in this case. While the party claiming a defective record has the option of utilizing the Rule 809.15(3) motion, there is no requirement that he or she do so. *DeLeon,* on which the state would rely, made it clear that the procedure was not a prerequisite to a claim of a

defective transcript. The *DeLeon* court pointed out that "Rule 809.15(3), Stats., *allows* a party who believes the transcript is defective to move the court to correct the record." (Emphasis supplied.) *DeLeon*, 127 Wis. 2d at 78.

We accept the reasoning of *DeLeon* and recognize the precedential nature of its holding that Rule 809.15(3) "allows" the motion outlined therein but does not require it.

*DeLeon* imposes a burden on the appellant to allege an "error" in the portion of the trial omitted from the transcript. As *DeLeon*, 127 Wis. 2d at 77, states:

> "Where, as here, a portion of the record is lost through no fault of the aggrieved party, that party should not be made to bear the burden of the loss."

The burden is merely to allege the error in the omitted portion of the transcript. Whatever the precedential value of *Peterson v. State*, 73 Wis. 2d 417, 243 N.W.2d 491 (1976), and *State v. Prober*, 87 Wis. 2d 423, 275 N.W.2d 123 (Ct. App. 1978), in other respects, they are based upon the provisions of sec. 817.117, Stats. (the settlement of the record procedure), which were deleted from the statutes in 1977 at the time of court reorganization. The statutory procedure underlying the waiver holding by this court in *Peterson* and the court of appeals in *Prober* no longer exists. Neither the statutory basis nor the logic of those cases is applicable in the instant case.

The court of appeals did not consider the argument of Perry that he had been improperly imprisoned. under what amounted to a ten-year sentence, *i.e.*, two consecutive five-year terms. He claimed his sentence was a sentence of five years, with other five-

year terms to be served concurrently. Because we agree with Perry's construction of his sentence as imposed, we direct that his primary sentence be deemed a five-year sentence, with the remaining sentences to be served concurrently with the first five-year sentence.

The following facts are relevant to this issue:

At the sentencing hearing on June 21, 1983, the trial court orally sentenced Perry to an indeterminate term not to exceed five years on all three counts:

> "The court will order that the sentences imposed on the offense of burglary and robbery be served concurrently with each other and concurrently with the sentence imposed for injury by conduct regardless of life."

The judgment of conviction, signed by Judge Dahlberg on June 21, 1983, differed from the sentence pronounced in court. The judgment recites:

> "COURT ORDERS SENTENCES IMPOSED ON COUNTS #1 AND #2 TO BE SERVED CONCURRENTLY WITH EACH OTHER AND CONSECUTIVELY TO SENTENCE ON COUNT #3."

The discrepancy between the oral pronouncement, as reflected in the sentencing transcript, and the judgment of conviction was first raised by Perry on March 12, 1984, in a motion in the circuit court to amend the judgment of conviction. The court reporter who reported the sentencing hearing appeared and was questioned at a hearing on April 25, 1984, concerning the contents of her notes from that sentencing hearing. The reporter stated her notes read precisely as did the sentencing transcript. The court refused to correct the record to conform with the

sentencing transcript, concluding that, "If the Court intended to make all sentences concurrent, it would simply have stated, 'all sentences concurrent.'"

Perry, relying largely on this court's decision in *Scott v. State*, 64 Wis. 2d 54, 218 N.W.2d 350 (1974), argues that the sentence pronounced orally and recorded in the sentencing transcript controls. In *Scott*, the court made clear that a court should not increase a sentence on "'reflection' alone." *Id.* at 59. In *Scott*, the trial judge sentenced a defendant to a five-year term for robbery. The next day he attempted to increase the sentence to conform to his unspoken intent to impose a longer sentence. This court relied on the reasoning of *Chandler v. United States*, 468 F.2d 834 (5th Cir. 1972), in refusing to allow the judge to increase the orally pronounced sentence:

> "'. . . [T]he Government argues that an exception should be recognized in cases such as this where the alteration of the sentence was undertaken solely to conform to the original intention of the trial judge and the error in the original sentence was due solely to an inadvertent transposition of the numbers. Were we clairvoyant and able to say for certain in every case what the trial judge really 'intended,' this argument might be persuasive. Being merely mortals however, we must refrain from such delicate undertakings, and we refuse to sanction a procedure that encourages such an inquiry.' *Id.* at page 836."

The state concedes that, when an oral sentence pronouncement is unambiguous, it controls over a written judgment. The state distinguishes this case from *Scott* on the basis that the oral sentencing pronouncement in this case is ambiguous or unclear. The state argues that, when the sentence is ambigu-

113

ous, it is for the trial court to resolve the actual contents of the oral pronouncement. *E.g., Johnson v. Mabry*, 602 F.2d 167, 170–71 (8th Cir. 1979). The state contends that the trial court's finding that it orally pronounced consecutive sentences, not concurrent sentences, should not be overturned, because it is based on substantial evidence.

We conclude that the oral sentence is unambiguous. It may be that the trial judge intended to impose consecutive sentences, but all the evidence of his oral pronouncement, except for his attempt at recollection a full ten months after trial, demonstrates that, without equivocation, he imposed the concurrent sentences. The possibility that a reporter's error was made should not be resolved against Perry.

> "The possibility of abuses inherent in broad judicial power to increase sentences outweighs the possibility of windfalls to a few prisoners." *United States v. Sacco*, 367 F.2d 368, 370 (2d Cir. 1966).

A substantial number of federal courts of appeals and state courts also subscribe to the principle urged by Perry and followed in Wisconsin that, where a conflict exists between a court's oral pronouncement of sentence and a written judgment, the oral pronouncement controls. *United States v. Kindrick*, 576 F.2d 675, 677 (5th Cir. 1978); *State v. Cousins*, 208 Neb. 245, 247, 302 N.W.2d 731 (1981). Any uncertainty should be resolved in favor of the defendant. *See, United States v. Munoz-Dela Rosa*, 495 F.2d 253, 256 (9th Cir. 1974):

> "[T]he difficulties in formulating a principle to establish an exception to the well-established rules ... have led us to the conclusion that the interests

114

of justice, in the light of constitutional double jeopardy protections ... require strict adherence to the axiom that an unambiguous oral pronouncement of a legal sentence must control."

While we respect the sincerity of the trial judge's belief that he accurately recalls what he said ten months before, we think it inappropriate under established Wisconsin law to permit an amendment to the sentence. The effective sentence is that pronounced from the bench.

Accordingly, we affirm the decision of the court of appeals, which reversed the judgment of the circuit court and which ordered a new trial. Additionally, we reverse the order of the circuit court, which construed the sentence to be consecutive, and instead determine that all sentences imposed were concurrent.

*By the Court.*—Decision of the court of appeals affirmed; sentencing judgment of the circuit court is reversed and modified.

LOUIS J. CECI, J. (*dissenting*). While the majority purports to follow the procedure articulated in *DeLeon* for determining whether defendant's conviction should be reversed, I do not believe that the requirements of that case have in fact been met here. As such, I respectfully dissent.

The majority position is that *DeLeon* requires no more than that the appellant allege that there is "some likelihood that the missing portion [of the trial transcript] would have shown an error that was arguably prejudicial." Majority opinion at page 103. It states that neither *DeLeon* nor the appeals court's decision below "requires that there be an initial

showing of 'prejudicial error.'" *Id.* I do not believe that this language comports with the requirements set forth in *DeLeon.* Rather, I believe that a threshold allegation of actual prejudicial error is necessary under the *DeLeon* analysis. An allegation of prejudicial error would ensure the reviewing court that significant judicial resources are not wasted where only "small or insignificant omissions" in the trial transcript are actually at issue. *DeLeon,* 127 Wis. 2d at 79.

*DeLeon* set out a two-step process which a trial court must follow where questions concerning the adequacy of the trial transcript are involved. The first step mandates that a trial court make an inquiry to determine whether the appellant has established a "facially valid claim of error." 127 Wis. 2d at 80. This inquiry is conducted only after the appellant has actually alleged that some "error in the missing portion of the proceedings" has occurred. *Id.* "[C]ommon sense demands that the appellant claim some reviewable error occurred during the missing portion of the trial." *Id.*

Only after a reviewable error has been claimed and a determination made by the court that that claim is "facially valid," *id.*, does the court move on to the next step, which is to inquire as to whether the missing portion of the trial transcript can be reconstructed. *Id.* at 81. If the court determines that efforts to reconstruct will be insurmountable, then a new trial should be ordered. *Id.*

In this case, Perry has not established with the requisite specificity that a "reviewable error" has occurred, and, therefore, it is my position that the majority should not have moved on to the second step of the *DeLeon* analysis. Perry argues that prosecutori-

al misconduct permeated the entire trial. In support, he refers to several allegedly inflammatory remarks made by the prosecutor during trial. In addition, in his brief to this court, he states that the reporter's notes from part of the prosecutor's closing argument were among those which were lost, portions of which "very well could have contained more instances of prosecutorial misconduct." Based upon these allegations, and given that a prosecutor's prejudicial comments during closing argument may provide grounds for reversal, Perry contends that a "colorable need" for a complete transcript has been established.

*DeLeon* plainly stated that the appellant must claim that "some reviewable error occurred" during the missing portion of the transcript. 127 Wis. 2d at 80. Perry's conclusory and speculative statements about what may have occurred during trial do not satisfy *DeLeon's* mandate that an allegation be made that some prejudicial error has in fact occurred. Obviously, Perry could not provide a word-for-word account of the statements made by the prosecutor which were allegedly prejudicial. However, he should be required to provide an allegation of error which is concrete and as detailed as practically possible. A generalized statement that the closing argument may have included further instances of prosecutorial misconduct is not sufficient under *DeLeon.* Because I believe that Perry has failed to carry his burden under *DeLeon,* I cannot join in the majority's opinion.

I am authorized to state that JUSTICE ROLAND B. DAY joins in this dissenting opinion.