COURT OF APPEALS
DECISION
DATED AND FILED

April 29, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP176-CR**

Cir. Ct. No. 2022CF324

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

KRISTIN A. RUPNOW,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Ozaukee County: PAUL V. MALLOY and SANDY A. WILLIAMS, Judges. *Affirmed.*

Before Gundrum, Grogan, and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Kristin A. Rupnow appeals from a judgment entered on a jury verdict convicting her of one count of theft in a business setting in an amount greater than $10,000 but less than $100,000. Rupnow also appeals from a trial court order denying her motion for postconviction relief.[1] On appeal, she argues that the court erred in denying her postconviction motion alleging ineffective assistance of trial counsel without holding a *Machner*[2] hearing and that she has demonstrated counsel's ineffectiveness as to several matters. Rupnow further asserts that the court erroneously exercised its discretion when it ordered the amount of restitution. Finally, she argues that the court erred when it determined that some pages missing from an exhibit presented at trial could be reconstructed using trial testimony. For the reasons that follow, we affirm.

## BACKGROUND

¶2 The parties do not dispute the following facts. The State charged Rupnow with one count of theft in a business setting, the amount of theft totaling over $100,000. *See* WIS. STAT. § 943.20(1)(b), (3)(cm) (2023-34).[3] The complaint alleged that when Rupnow was employed as the office manager at the Northshore Clinic and Consultation in Cedarburg, Wisconsin (Northshore), she engaged in an ongoing scheme to steal money from the business, beginning January 1, 2018 and extending through July 1, 2021. The doctor who owned

---

[1] The Honorable Paul V. Malloy presided over Rupnow's jury trial and sentencing hearing (hereinafter the "trial court"). The Honorable Sandy A. Williams presided over Rupnow's postconviction proceedings.

[2] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[3] All references to the Wisconsin Statutes are to the 2023-24 version.

Northshore during the period in question, JAM,[4] reported to law enforcement that Rupnow had been utilizing a company credit card to purchase multiple personal items and to conduct personal online transactions, such as booking a trip to Florida, and Rupnow added hours to her pay periods by adding overtime and vacation time, paying herself out for vacation time, and increasing the amount of payments and providing an unauthorized bonus for Rupnow's adult daughter, Heidi, who also worked for Northshore. In total, JAM was able to establish that Rupnow's theft from Northshore through her scheme totaled $137,664.66.

¶3     At Rupnow's jury trial, JAM testified that Rupnow had worked for Northshore for approximately 30 years. She explained that Rupnow's scheme came to light when JAM's daughter, who was considering buying into the counseling practice, discovered numerous discrepancies in Northshore's financial records. JAM explained that she had not reviewed Rupnow's work before that time because she "just always trusted her to pay all the bills, and I never looked at them specifically" until JAM's daughter highlighted some of the issues she noticed.

¶4     Through JAM, the State offered an exhibit, marked as Exhibit 1, that JAM testified consisted of statements and "printouts of the monthly charges on [Rupnow's company credit] card." Information was then extrapolated from those original credit card statements, among other records that JAM reviewed, and it was compiled into a list that became Exhibit 2. Trial counsel objected to the State's offering these exhibits through JAM on foundational and hearsay grounds

---

[4] We refer to the victim here using the same initials as the parties to protect a victim's right to privacy.

and renewed the objection multiple times during the trial. The trial court overruled each objection.

¶5   JAM was provided with Exhibit 1 during trial. She told the jury that it encompassed printouts of the monthly charges on Rupnow's company credit card. Defense counsel extensively cross-examined JAM on Exhibit 1 and the related Exhibit 2. According to the State, Exhibit 1 consisted of a total of 26 pages of credit card statements.

¶6   When asked about Exhibit 2, JAM testified that she made the list, using the credit card statements to compile it. She later stated, "You know, honestly, I'm not sure that I made this list, or I just -- I circled everything on the -- on the statements, and somebody else came up with this -- this actual list in a row, in a neat way." Trial counsel objected, but the court overruled, finding that JAM "worked off the statement. Somebody compiled it."

¶7   JAM continued testifying that she was familiar with the list, reviewed the list in the presence of the police officers, and then proceeded to explain the list in detail. While JAM admitted that the passage of time meant she was no longer confident whether she personally, or someone else, had prepared the list, but in reviewing the list during the course of cross-examination, she testified that she had highlighted the entries that were potentially approved, but admitted that she could have missed some of the unapproved transactions.

¶8   During deliberation, the jury sent two questions to the court. It first requested 12 copies each "of all exhibits" and "of a schedule totalling [sic] [the] full amount." The trial court sought clarification from the jury as to precisely what it sought as to the second request, to which the jury foreperson replied:

> Breakdown of how you came up with the total amount for each category.
>
> Credit Cards -- total
>
> Vacation hours -- total
>
> Regular hours -- total
>
> OT -- total
>
> HSA – total

The court's final response to the jury was, "There is no exhibit that has a total for each of the categories you requested, you will have to rely on the evidence presented and your recollection."

¶9    After deliberation, the jury convicted Rupnow of the lesser-included offense of theft in a business setting, the amount totaling over $10,000 but less than $100,000. *See* WIS. STAT. § 943.20(1)(b), (3)(c). The State requested that the trial court order restitution in an amount higher than $100,000, and the court agreed. After holding a restitution hearing, the court issued a thorough written decision ordering Rupnow to pay Northshore $137,664.66. In its decision, the court observed that, at restitution hearings, the "burden of proof is significantly lower than the proof beyond a reasonable doubt standard applicable to the underlying criminal charge." The court expressed "that is important in this restitution case because it was clear that there was some laxity in the financial recordkeeping and permissible purchases."

¶10   Rupnow filed a postconviction motion. In preparation for the hearing, the State became aware that only the first four pages of Exhibit 1 were scanned by the clerk of court's office. It moved to correct the Record, and Rupnow objected. The postconviction court determined that "[t]he [R]ecord can

be reconstructed by looking at the testimony presented at the jury trial by [JAM] when she describes what the exhibit consists of."

¶11 The postconviction court rejected each of Rupnow's claims of error without a *Machner* hearing. It found that the motion did not present facts entitling Rupnow to relief for trial counsel's alleged deficiency in failing to challenge the complaint as duplicitous, craft an alternative unanimity jury instructions, or the reconstructed Record exhibit. It explained that "[a] trial attorney… is not deficient in their performance by making an argument that would fail or lose." Rupnow appeals.

## DISCUSSION

¶12 As previously noted, Rupnow raises three main arguments to this court. The first, concerning trial counsel's purported ineffectiveness, challenges the trial court's decision to deny Rupnow's postconviction motion without holding a *Machner* hearing. The second and third issues allege an erroneous exercise of discretion by the trial court in determining the amount of restitution and error in its reconstruction of Exhibit 1 from the trial Record. We address each issue in turn below.

## I. Ineffective Assistance of Counsel

¶13 On appeal, Rupnow renews her postconviction arguments asserting ineffective assistance of counsel. She claims counsel was ineffective in failing to challenge the complaint as duplicitous, failing to "craft jury instructions" to ensure a unanimous verdict, and failing to object to the admission of Exhibit 2 as violative of the Confrontation Clause. Rupnow argues she was entitled to a *Machner* hearing based on the contents of her motion.

¶14    To prevail on an ineffective assistance claim, a defendant must establish both that counsel performed deficiently and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  If the defendant fails to make a sufficient showing on one prong of the *Strickland* test, we need not address the other. *Id.* at 697.  To prove deficient performance, a defendant must point to specific acts or omissions by counsel that are "outside the wide range of professionally competent assistance." *Id.* at 690.  To prove prejudice, a defendant must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Balliette*, 2011 WI 79, ¶24, 336 Wis. 2d 358, 805 N.W.2d 334 (citation omitted).

¶15    Ineffective assistance claims present mixed issues of fact and law. *Id.*, ¶19.  We will uphold the trial court's factual findings "unless shown to be clearly erroneous[,]" but "[t]he ultimate conclusion as to whether there was ineffective assistance of counsel is a question of law." *Id.*

¶16    Rupnow first contends her trial counsel was ineffective by failing to challenge the sole charge against her as duplicitous, meaning that it improperly joins two or more separate offenses in a single count. *See State v. Copening*, 103 Wis. 2d 564, 572, 309 N.W.2d 850 (Ct. App. 1981).  "A duplicitous charge is defective because the jury may find the defendant guilty without the [S]tate proving each element of the offense beyond a reasonable doubt." *Id.*  However, an offense composed of continuous acts may be charged as a single count without rendering the charge duplicitous. *Id.*  To explain further, the State has discretion to charge a defendant with one continuing offense based on multiple criminal acts when "the separately chargeable offenses are committed by the same person at substantially the same time and relating to one continued transaction[.]" *State v.*

*Miller*, 2002 WI App 197, ¶23, 257 Wis. 2d 124, 650 N.W.2d 850.  In such a case, "[t]he nature of the charge is a matter of election on the part of the [S]tate." *Copening*, 103 Wis. 2d at 572.

¶17    The sole count alleged an ongoing scheme by Rupnow to steal over $100,000 from the same employer during the same time period.   Despite Rupnow's insistence that each variety of theft from Northshore must have been charged as a separate offense, we conclude that the State was entitled to charge her entire scheme to steal from Northshore as one offense.

¶18    *State v. Jacobsen*, 2014 WI App 13, 352 Wis. 2d 409, 842 N.W.2d 365 (2013), informs our decision as to the alleged duplicity of the charge against Rupnow.  In *Jacobsen*, we held that the State has discretion to charge a defendant with one continuing offense based on multiple criminal acts when "the separately chargeable offenses are committed by the same person at substantially the same time and relating to one continued transaction[.]" *Id.*, ¶18 (citation omitted).  We explained there that "[WIS. STAT. §] 971.36(3) unambiguously states that, in a case involving more than one theft, 'all thefts may be prosecuted as a single crime' if certain conditions are met." *Jacobsen*, 352 Wis. 2d 409, ¶21.  These "conditions" require that for the State to charge a defendant in this manner, it must establish that "[t]he property belonged to the same owner and the thefts were committed pursuant to a single intent and design or in execution of a single deceptive scheme[.]" *Id.*, ¶20.  As with the defendant in *Jacobsen*, Rupnow has failed to persuade us that this statute does not apply here. *See id.*, ¶21.

¶19    Despite the fact that WIS. STAT. § 971.63 permits the State to charge multiple thefts as one crime, Rupnow argues that it was improper to do so in her case based on "'the purposes of the prohibition against duplicity[.]'" *See id.*, ¶22,

citing ***State v. Lomagro***, 113 Wis. 2d 582, 588, 335 N.W.2d 583 (1983). These purposes are as follows:

> (1) to assure that the defendant is sufficiently notified of the charge; (2) to protect the defendant against double jeopardy; (3) to avoid prejudice and confusion arising from evidentiary rulings during trial; (4) to assure that the defendant is appropriately sentenced for the crime charged; and (5) to guarantee jury unanimity.

*Id.* at 586-87.

¶20    Rupnow argues that the third, fourth, and fifth purposes listed are implicated by the criminal complaint here. As to the prejudice and confusion piece, Rupnow cites ***Champlain v. State***, 53 Wis. 2d 751, 193 N.W.2d 868 (1972), in support of her position the "intermix[ing]" of individual and distinct courses of conduct that have misled the jury and leads to "the conclusion [that] the real issue[s] [have] not been tried." *See id.* at 756. And, as in ***Champlain***, Rupnow asserts that she is entitled to a new trial in the interest of justice. *See id.*

¶21    In ***Champlain***, our supreme court ordered a new trial for the defendant, who had been charged with two separate offenses of burglary with intent to steal and burglary with intent to commit a felony. The charges were based on allegations that he and several co-actors allegedly broke into two separate private buildings, taking a coin purse from one and several saws from another. The court noted that the information, jury instructions, and verdict form were ambiguous as to both counts, and the ambiguity resulted in a lack of notice to the defendant as to the charges against him. It explained that "[b]esides the ambiguity in the count and verdict, the instructions of the court intermixed burglary with intent to steal with intent to commit a felony and are so misleading that we have come to the conclusion the real issue has not been tried." *Id.*

¶22 *Champlain* is inapposite. Rupnow does not argue that the charging documents here were insufficient to put her on notice of the conduct for which she was accused, nor could she successfully launch such an argument. Here, the complaint and information put Rupnow on notice that she was charged with one crime—theft in a business setting with the amount of theft totaling over $100,000—for her ongoing scheme to steal money from her employer, Northshore, during the period ranging from January 1, 2018 to July 1, 2021. Moreover, the complaint here was specific as to the when, how, and how much Rupnow allegedly stole during her ongoing scheme, which was over $100,000.

¶23 Rupnow's situation is instead governed by cases including *Jacobsen*, *Miller*, *Copening*, and *State v. Elverman*, 2015 WI App 91, 366 Wis. 2d 169, 873 N.W.2d 528. In *Elverman*, the State charged the defendant, an attorney who was appointed as D.P.'s guardian, with theft exceeding $10,000, between March 25, 2003, and September 23, 2004, by transferring D.P.'s movable property without consent and with the intent to permanently deprive D.P. of her property. *Id.*, ¶3. Elverman moved to overturn an earlier trial court decision finding probable cause that he committed a felony arguing, as pertinent here, "that Elverman's alleged conduct could not be charged as a continuing offense." *Id.*, ¶7. The court denied Elverman's motion. *Id.*

¶24 On appeal, Elverman renewed his argument that the complaint was insufficient to put him on notice and further argued that the charge against him created jury unanimity issues. *Id.*, ¶15. We rejected his arguments, reaffirming the holding in *Jacobsen*, et al., that "[t]he State has discretion to charge an ongoing scheme as a single offense rather than charging each specific act as its own offense, even where each act itself could be a violation of a criminal statute." *Id.*, ¶20. As such, we "conclude[d] that the complaint sufficiently advised

10

Elverman of the nature and cause of the charges against him so that he could plead and prepare a defense." *Id.*, ¶24.

¶25 We further concluded that "Elverman was charged with one count of theft based on a continuous offense, and it was therefore sufficient that the jury unanimously conclude that Elverman had committed the crime as charged," theft, "and that the theft had exceeded a total value of $10,000." *Id.*, ¶50. Accordingly, we determined the court did not err in not giving a unanimity jury instruction, and the protection against duplicity was not violated. *Id.*

¶26 We reach the same conclusions here. The State was entitled to charge Rupnow's ongoing scheme to steal from her employer as a single count in the aggregate amount over $100,000 based on the facts set forth in the complaint, and an objection would have been futile. Regarding the jury instructions, trial counsel was not required to craft a unanimity instruction because the pattern instruction sufficiently ensured jury unanimity. Only one crime was charged, and the jury unanimously determined that the State only had met its burden of establishing that Rupnow stole $100,000 through her ongoing scheme.

¶27 Finally, we reject Rupnow's last claim of ineffective assistance in her postconviction motion that trial counsel should have objected to Exhibit 2 on confrontation grounds. "The Confrontation Clause of the Sixth Amendment of the United States Constitution prevents the admission of testimonial hearsay when the declarant is absent from trial unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness." *State v. Thomas*, 2023 WI 9, ¶25, 405 Wis. 2d 654, 985 N.W.2d 87 (citing *Crawford v. Washington*, 541 U.S. 36, 51 (2004)). "The Sixth Amendment right of confrontation is a 'fundamental right, as made applicable to and obligatory on the states by the

Fourteenth Amendment.'" ***Thomas***, 405 Wis. 2d 654, ¶25 (citation omitted). "Testimonial statements are those made 'under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" ***Thomas***, 405 Wis. 2d 654, ¶29 (quoting ***Crawford***, 541 U.S. at 52).

¶28 There was no Confrontation Clause violation. Rupnow's arguments ignore that JAM, a lay witness, testified about her knowledge of the list and how it exemplified the investigation that she undertook when Rupnow's crime was discovered. JAM's trial testimony established her extensive familiarity with Exhibit 2, including why she had highlighted certain entries but not others. Trial counsel extensively cross-examined JAM on the contents and review of the exhibit. Any objection on the basis that Rupnow's right-to-confrontation was violated would have failed.

¶29 If a postconviction "motion does not raise facts sufficient to entitle the defendant to relief, or if it presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the [trial] court has the discretion to grant or deny a hearing." ***State v. Ruffin***, 2022 WI 34, ¶28, 401 Wis. 2d 619, 974 N.W.2d 432. "In other words, if the record conclusively demonstrates that the defendant is not entitled to relief, then either option—holding a hearing or not—is within the [trial] court's discretion." ***Id.*** This court "review[s] discretionary decisions for an erroneous exercise of discretion." ***Id.*** "An exercise of discretion is erroneous if it is based on an error of fact or law." ***Id.***

¶30 We affirm the postconviction court's decision to exercise its discretion not to hold a ***Machner*** hearing. Counsel cannot be ineffective for

failing to raise meritless arguments. *See State v. Christopher Allen*, 2017 WI 7, ¶46, 373 Wis. 2d 98, 890 N.W.2d 245 ("It is well-established that trial counsel could not have been ineffective for failing to make meritless arguments."). Because the postconviction motion alleged facts that, if true, still would not establish ineffective assistance of counsel, the court did not err in denying the motion without a *Machner* hearing.

## II. Restitution

¶31    Rupnow next challenges the restitution award of $137,664.66. Restitution is governed by WIS. STAT. § 973.20.  In disputes concerning the calculation of criminal restitution, we review the decision of the trial court for an erroneous exercise of discretion.  *State v. Canady*, 2000 WI App 87, ¶6, 234 Wis. 2d 261, 610 N.W.2d 147.  "We may reverse a discretionary decision only if the [trial] court applied the wrong legal standard or did not ground its decision on a logical interpretation of the facts."  *Id.*  "Whether the trial court is authorized to order restitution pursuant to … § 973.20 under a certain set of facts presents a question of law that we review *de novo*."  *State v. Lee*, 2008 WI App 185, ¶7, 314 Wis. 2d 764, 762 N.W.2d 431.

¶32    Under that section, the trial court "shall order the defendant to make full or partial restitution under this section to any victim of a crime considered at sentencing" WIS. STAT. § 973.20(1r).  A crime considered at sentencing means "any crime for which the defendant was convicted and any read-in crime." Sec. 973.20(1g)(a).  To order restitution, the court must find a "causal nexus" between the "crime considered at sentencing" and the victim's alleged damage. *State v. Queever*, 2016 WI App 87, ¶11, 372 Wis. 2d 388, 887 N.W.2d 912 (quoting *Canady*, 234 Wis. 2d 261, ¶9).  "In proving causation, a victim must

show that the defendant's criminal activity was a 'substantial factor' in causing damage. The defendant's actions must be the 'precipitating cause of the injury' and the harm must have resulted from 'the natural consequence[s] of the actions.'" *Queever*, 372 Wis. 2d 388, ¶11 (alterations in original; citation omitted).

¶33 Rupnow argues that the trial court erroneously exercised its discretion in ordering her to pay in restitution the full amount of the Northshore losses to which JAM testified. According to Rupnow, because the jury convicted her of a lesser-included theft than that charged, the court was not entitled to award restitution greater than $100,000 because it supplanted the jury's decision. However, because "restitution is not limited by a jury's determination of the value of the stolen property for purposes of the criminal charge," we reject this argument. *See* **State v. Kennedy**, 190 Wis. 2d 252, 256, 528 N.W.2d 9 (Ct. App. 1994).

¶34 As pertinent here, Kennedy was convicted by a jury of theft of a vehicle as party to a crime. *See id.* The jury determined the vehicle to be worth over $500 but less than $2,500. **Id.** The trial court ordered Kennedy to pay the vehicle owner restitution of $5,309 as recommended by the State as the amount allegedly lost by that victim. **Id.** On appeal to this court, we affirmed his conviction but remanded to the trial court to make findings considering the factors set forth in the restitution statute. **State v. Kennedy**, No. 92–2004–CR, unpublished slip op. at 5 (Wis. Ct. App. April 21, 1993). On remand, the court held an evidentiary hearing, after which it ordered restitution in the same amount as previously ordered. **Kennedy**, 190 Wis. 2d at 257.

¶35 In affirming the trial court's restitution order, we rejected "Kennedy's argument that restitution is limited by a jury's determination of the

14

value of stolen property[,]" explaining that such a limit on discretion "eliminates the sentencing judge's discretion and ignores legitimate sentencing factors, such as the rehabilitative component of restitution." *Id.* at 259.

¶36 We have also held that a trial court may order restitution in an amount higher than the findings of the loss valuation at trial when tied to a purpose of punishment. *See*, *e.g.*, *State v. Boffer*, 158 Wis. 2d 655, 662, 462 N.W.2d 906 (Ct. App. 1990); *State v. Foley*, 142 Wis. 2d 331, 343, 417 N.W.2d 920 (Ct. App. 1987). Moreover, the law "permits the court to fashion the punishment to fit the crime[,]" which is precisely what happened here. *See Boffer*, 158 Wis. 2d at 662.

¶37 Rupnow fails to persuade us that the trial court erroneously exercised its discretion in ordering restitution in her situation—the court is not bound by jury determinations of loss at sentencing. As noted, it was within the court's discretion to order more than the loss amount for which the jury convicted Rupnow and the burden of proof is less than beyond a reasonable doubt. Rupnow provides no significant justification for her position apart from it supplanting the jury's loss valuation. This is not sufficient to demonstrate an erroneous exercise of sentencing discretion here. Accordingly, we affirm the restitution order as an appropriate exercise of discretion.

## III. Reconstructing the Record

¶38 As her final argument on appeal, Rupnow argues that the postconviction court "failed to properly reconstruct the record" in "recreat[ing]" Exhibit 1, which "denied her a right to a complete appellate record." The right to appeal is absolute under the Wisconsin Constitution. WIS. CONST. art. I, § 21(1); *State v. Perry*, 136 Wis. 2d 92, 98, 401 N.W.2d 748 (1987). As part of that right,

a defendant must be provided "a full transcript—or a functionally equivalent substitute that, in a criminal case, beyond a reasonable doubt, portrays in a way that is meaningful to the particular appeal exactly what happened in the course of trial." *Perry*, 136 Wis. 2d at 99. If a deficiency in the transcript deprives a defendant of a meaningful appeal, the remedy is a new trial. *Id*. However, a new trial is only warranted if the defendant can show a "colorable need," meaning "an error which, were there evidence of it revealed in the transcript, might lend color to a claim of prejudicial error." *Id.* at 101 (citation omitted).

¶39 We conclude that Rupnow has shown a "colorable need." Accordingly, we must now review whether the postconviction court could adequately reconstruct the Record. *See State v. Raflik*, 2001 WI 129, ¶¶35-36, 248 Wis. 2d 593, 636 N.W.2d 690.

¶40 We have stated that, when disputes about the record remain, those disputes will be settled by the postconviction court, relying on its own recollection and notes or materials from the parties as an aid to reconstruction. *Id.*, ¶36. The court may also conduct hearings and consult with counsel during the process. *Id.* The court's "duty is to establish what the [missing content] was," not to "speculate about what the testimony probably was or might have been." *State v. DeLeon*, 127 Wis. 2d 74, 81, 377 N.W.2d 635 (Ct. App. 1985).

¶41 In a criminal trial, the trial court must be satisfied beyond a reasonable doubt that the State met its burden of proof in establishing that the missing testimony could be properly reconstructed. *Id.* at 82. On appeal, we review "every step of this procedure," "and appellate courts should review errors in the reconstruction itself under the 'clearly erroneous' standard." *Raflik*, 248 Wis. 2d 593, ¶36 (citation omitted). But whether reconstruction of the trial court

record is adequate is a question of law reviewed de novo. *Perry*, 136 Wis. 2d at 97.

¶42 Here, the postconviction court was able to reconstruct the record and its factual conclusions are not clearly erroneous. The defect here was with missing pages of an exhibit—there were no issues with the transcript. JAM testified extensively at trial about the information reflected in the document. In addition, Rupnow fails to point to any specific "errors within the record." *See DeLeon*, 127 Wis. 2d at 80 (explaining "[b]efore any inquiry concerning missing notes takes place, common sense demands that the appellant claim some reviewable error occurred during the missing portion of the trial."). Third, the postconviction court determined that the Record can be reconstructed through JAM's trial testimony, and Rupnow fails to show how this reconstruction resulted in an inadequate record, particularly when she concedes there are no "errors within the record."

¶43 Finally, we decline Rupnow's invitation to order a new trial in the interest of justice. As we have explained, Rupnow fails to persuade us that the postconviction court's reconstruction of the Record was erroneous and fails to explain how she was prejudiced by the reconstructed exhibit or any other alleged errors by the State, trial counsel, and the court.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

17