STATE of Wisconsin, Plaintiff-Respondent,

v.

Raul DELEON, Defendant-Appellant.

Court of Appeals

No. 84–1949–Cr. Submitted on briefs September 10, 1985.—Decided October 23, 1985.
(Also reported in 377 N.W.2d 635.)

For the defendant-appellant, the cause was submitted on the brief of *Domingo S. Cruz,* attorney at law, of Racine.

For the plaintiff-respondent, the cause was submitted on the brief of *Bronson C. LaFollette,* attorney general, and *Mary Batt,* assistant attorney general.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J. The appeal in this case provides this court with an opportunity to clarify the procedure used when it is discovered that a court reporter's notes are lost while post-trial proceedings are pending.[1]

The defendant, Raul DeLeon, seeks a reversal of his conviction for first-degree sexual assault because a portion of the court reporter's notes was lost, creating an omission in the trial court transcript. We hold that the fifteen minutes of lost testimony did not constitute a prejudicial omission in the transcript justifying reversal. We affirm.

DeLeon was charged with first-degree sexual assault, contrary to sec. 940.225(1)(d), Stats. A trial to the court was held, and DeLeon was found guilty of the charge. Subsequent to conviction and sentencing, it was discovered that the court reporter had lost a portion of her notes comprising approximately fifteen minutes of testimony.

DeLeon, who had obtained new counsel to represent him during the post-conviction stage, first moved to correct the record. In response to this motion, the trial court ordered a briefing schedule "on the issue of whether a new trial is required in light of the lost notes of the court reporter." Ultimately, the trial court denied the motion for a new trial, holding that the appropriate remedy was to recall the witnesses whose testimony was lost and attempt to reconstruct their testimony at the hearing. The

---

[1] Because of the supervisory nature of this issue, we certified the issue to the supreme court on July 17, 1985. The certification was denied on September 10, 1985.

hearing was held on two separate dates. Three witnesses were again examined; also examined were the defense counsel at trial and the assistant district attorney who prosecuted the trial.

The trial court then analyzed the testimony and reached a decision. This decision, although not formally labeled as findings of fact, compared the various inconsistencies in the testimony in light of the credibility of the witnesses and made findings as to the substance of the missing testimony. The trial court then held that the record had been adequately reconstructed for all purposes and denied the defendant's motion for a new trial.

It is this procedure that DeLeon takes issue with on appeal, asserting: (1) the record was not properly reconstructed—in particular the testimony of a social worker, and (2) as one of his claims is ineffectiveness of counsel, he is still unable to assess the original question and answer format of defense counsel during the omitted portion of the transcript.

Courts in other jurisdictions have previously dealt with the problem of transcript omissions and have attempted to reconcile the two conflicting interests which emerge. Where, as here, a portion of the record is lost through no fault of the aggrieved party, that party should not be made to bear the burden of this loss. *See United States v. Ullrich*, 580 F.2d 765, 773 n.13 (5th Cir. 1978). However, a failure to obtain every word of the trial proceedings should not be held to be reversible error *per se. See United States v. Renton*, 700 F.2d 154, 157 (5th Cir. 1983); *United States v. Alfonso*, 552 F.2d 605, 620 (5th Cir.), *cert. denied*, 434 U.S. 857 (1977).

There was at one time a Wisconsin statute which governed the approval of transcripts and established a procedure for correcting a defective transcript in this state. *See* sec. 817.117, Stats. (1975); *Peterson v. State*, 73 Wis.2d 417, 243 N.W.2d 491 (1976). This statute was repealed in 1978.

77

*See* Sup. Ct. Order, 83 Wis.2d xxv, eff. July 1, 1978. As explained in the 1978 Judicial Council comments following the current Rule 809.16, Stats.:

> The provisions of former s. 817.117, detailing the procedure for approval of the transcript, *are eliminated in favor of the federal procedure which treats the correction of the transcript the same as correction of any other part of the record. Thus, correction of any alleged error in the transcript will be made under Rule 809.15(3).* [Emphasis added.]

Rule 809.15(3), Stats., allows a party who believes the transcript is defective to move the court to correct the record. It offers little guidance, however, as to the procedure to be used when faced with this problem. Because it was intended that federal procedure be followed, we turn to an examination of Federal Rule of Appellate Procedure 10 entitled "The Record on Appeal."[2]

---

[2] Interestingly, several federal courts have failed to use the procedure outlined in Fed. R. App. P. 10, relying instead on 28 U.S.C.A. § 753 (1968), which requires that all proceedings in criminal cases held in open court be recorded verbatim in devising methods for review. These courts, most notably the Fifth Circuit, have formulated a two-pronged test to be applied in determining whether an omission from a transcript requires reversal. If the appellant is represented by a different lawyer on appeal, the matter will be reversed upon a showing that there is a "substantial and significant omission in the transcript." *United States v. Colmenares-Hernandez,* 659 F.2d 39, 43 (5th Cir.), *cert. denied,* 454 U.S. 1127 (1981). Where the appellant is represented by the same attorney who represented him at trial, there must be a showing of *specific* prejudice from the loss of the record. *United States v. Selva,* 559 F.2d 1303, 1306 (5th Cir. 1977). The Fifth Circuit, however, has recently questioned the merits of its dual standard of review, reasoning that this two-fold rule "seems to invite the manipulation of appellate causes to achieve unmerited reversals." *United States v. Smith,* 591 F.2d 1105, 1109 n.1 (5th Cir. 1979). Further, it appears that this two-pronged test had been primarily used where the missing portion of the transcript consisted of opening or closing arguments, bench conferences and the like. *See United States v. Brumley,* 560 F.2d 1268, 1280 (5th Cir. 1977) (unrecorded bench conferences); *United States v. Bankston,* 603 F.2d

■

To summarize the rule, the parties should first attempt to prepare an agreed statement of the record on appeal, either by stipulation or by the amendment and counteramendment procedure outlined in Fed. R. App. P. 10(c). Then, if any dispute remains as to what occurred, the difference shall be submitted to and settled by the trial court. *See United States v. Mills,* 597 F.2d 693, 698 (9th Cir. 1979). In settling this dispute, some courts have held hearings, putting witnesses back on the stand and having them testify, to the best of their recollection, what transpired at trial. *See Johnson v. State,* 442 So.2d 193, 195 (Fla. 1983), *cert. denied,* —U.S.—, 80 L. Ed.2d 563 (1984).

■

In criminal cases, the above procedure should be executed with the goal of preserving the integrity of the trial process without violating any of the defendant's rights to a fair trial and effective review of that trial. A trial court should examine the amendments, seeking to prevent a second trial because of small or insignificant omissions

528, 534 (5th Cir. 1979) (failure to record all of defense counsel's objections); United States v. Taylor, 607 F.2d 153, 154 (5th Cir. 1979) (failure to record judge's charge to the jury); *Smith,* 591 F.2d at 1108 (unrecorded bench conferences). *But see United States v. Pilling,* 721 F.2d 286, 296 (10th Cir. 1983) (expert testimony); *Colmenares-Hernandez,* 659 F.2d at 43 (rebuttal testimony).

Other courts addressing this issue have consistently required the appellant to allege prejudice or an irregularity occurring in the missing portion of the transcript. *See, e.g., United States v. Weiner,* 578 F.2d 757, 789 (9th Cir.), *cert. denied,* 439 U.S. 981 (1978); *State v. Newman,* 326 N.W.2d 796, 799–800 (Iowa 1982); *Johnson v. State,* 442 So.2d 193, 195 (Fla. 1983), *cert. denied,* —U.S.—, 80 L. Ed.2d 563 (1984). Finally, a third view is that the absence of a part of the transcript does not warrant a new trial "unless the proceedings cannot be sufficiently reconstructed to allow effective appellate review of the claims raised by the defendant." *See State v. Vitale,* 460 A.2d 961, 964 (Conn. 1983), and the cases cited therein.

in the record while assuring that the defendant has not been prejudiced.

One court using this procedure is the District of Columbia Court of Appeals. *See Cole v. United States,* 478 A.2d 277, 280–85 (D.C. App. 1984).[3] In *Cole,* the court reporter's notes of the defendant's two-day trial were lost subsequent to the filing of the notice of appeal. The appellate court returned the case to the trial court, ordering the parties to prepare a substitute statement of the evidence presented at the trial. This was done, and the record was returned to the appellate court. After outlining the statutory procedure, the District of Columbia Court of Appeals recognized that the lack of a complete transcript is not always curable by efforts to reconstruct the record. Conceding that the supplemental record on appeal lacked the completeness and reliability necessary to protect the appellant's right to appeal and noting the appellate court's duty to engage in a meaningful review, the court reversed the conviction. *Id.* at 287.

Using the Federal Rules of Appellate Procedure and the *Cole* case as guides, we now develop the procedure that trial courts should follow in Wisconsin. Although the appeal is a criminal case, the same procedure will apply in civil cases.

Before any inquiry concerning missing notes takes place, common sense demands that the appellant claim some reviewable error occurred during the missing portion of the trial. Obviously, the trial court need not conduct an inquiry if the appellant has no intention of alleging error in the missing portion of the proceedings. If, however, the trial court determines that the appellant has at least a facially valid claim of error, the inquiry should take place.

---

[3] The District of Columbia Appellate Rules parallel Fed. R. App. P. 10(c)–(e). *See Cole* at 283 n.5.

The first inquiry a trial court must make after a facially valid claim has been found is whether the missing portion can be reconstructed. Assuredly, each fact situation will be different, with such variables as the length of the missing transcript, the availability of witnesses and trial counsel, and the amount of time which had elapsed between the trial and when it was learned the reporter's notes were missing. The trial court, in its discretion, should weigh these variables and determine whether reconstruction is a viable possibility. The trial court may find, as a matter of law, taking the claimed error in a light most favorable to the appellant, that the attempt at reconstruction is insurmountable; if so, a new trial should be ordered. *See Cole* at 285.

If the trial court determines that reconstruction can meaningfully be attempted, the appellant should prepare an affidavit of the evidence presented, as he or she best recollects it. Then the respondent should file objections or proposed amendments to it or approve the statements as accurate. The parties may also file a joint agreed statement.

If there is no dispute between the parties concerning the contents of the missing transcript, then the court may "settle and approve" the substituted record which it may then use in any post-trial proceedings before it. *See Cole* at 283–84; *Mills* at 698. If the trial court is not satisfied with the accuracy of the agreed statement, the court may modify the statement to make the record "conform to the truth."

If a dispute remains, the trial court must then engage in a second inquiry—whether the trial court may resolve the dispute. In proceedings pursuant to this inquiry, it is important to note that the trial court may not speculate about what the testimony probably was or might have been. Its duty is to establish what the testimony was. As aids to refresh the trial court's recollection, the trial court may rely on its own recollection and its notes from trial

in addition to the affidavits of the parties. It may conduct hearings and consult with counsel and other sources. *Cole* at 284–85; *see also Commercial Credit Equipment Corp. v. L & A Contracting Co.,* 549 F.2d 979, 980 (5th Cir. 1977).

In determining whether the trial court can resolve the dispute between the parties, the trial court must be satisfied to the same level of proof as required during the trial stage. In other words, in a criminal matter, the trial court must be satisfied *beyond a reasonable doubt* that the missing testimony has been properly reconstructed. In a civil case, the applicable level of proof must be met. We realize the substantial obligation this places on the trial court and recognize that a reconstructed record, after a lapse of several months, may be the exception rather than the rule. We also recognize that this is not a normal fact-finding process but is actually a process for refreshing recollection where the trial court is asked to accept one version over another. We conclude that this is all the more reason why a procedural safeguard is necessary to protect the appellant's right to a meaningful review. We therefore hold that if a trial court is unable to make a finding, using the requisite burden, the court should set aside the judgment and order a new trial. *See Cole* at 285. If, using the procedural safeguards, the trial court is able to resolve the dispute, the trial court shall "settle and approve" the substituted record after findings of fact are made.

Of course, every step of the heretofore described procedure is reviewable on appeal. Appellate courts may conclude, for instance, that the trial court abused its discretion in concluding that the missing portion of the transcript could be reconstructed. Should the trial court make a finding of fact and it is disputed by the appellant, the standard of review for reviewing this alleged error is the clearly erroneous rule. *See* sec. 805.17(2), Stats. Even if an appellate court finds error in the trial court's findings, harmless error may be found. *See* sec. 805.18(1), Stats.

In the case at bar, the trial court's actions sufficiently tracked the federal procedure which we adopt. Although amendments and counteramendments were never filed, five witnesses were examined—the victim, the defendant, the social worker and both trial counsel. The social worker testified that she had taken a statement from the child and then had removed both the child and the mother from the premises. The trial counsel testified that he was aware that the child's statement to the social worker differed somewhat from the child's statement to police and claimed he cross-examined the social worker about the inconsistencies. The social worker testified, however, that she did not remember being so questioned. At the conclusion of the hearing and on the basis of the testimony,[4] the trial court found that defendant's trial counsel was faulty in his recollection of how he cross-examined the social worker during trial. The court specifically found that counsel had not cross-examined the social worker on the substance of any statements given to her by the child victim.

DeLeon disputes the trial court's findings and asserts that the claimed cross-examination, if indeed it took place, "was critical in deciding credibility at trial." He apparently asserts that the cross-examination could well have impaired the victim's credibility. When a trial judge has acted as the finder of fact and where there is conflict-

---

[4] Ideally, the trial court would also be able to rely on its notes in reconstructing the testimony. However, the record indicates that the trial court had already discarded its notes at the time the parties learned of the lost testimony.

We note, however, that the trial court offered to reopen the defendant's trial and reinstate the defendant's presumption of innocence. The defendant refused this option because it would have been a trial to the court, not the jury, the defendant having previously waived his right to a jury trial. While we do not hold that this is a necessary avenue, we applaud the trial court's attempt to preserve the defendant's rights.

ing testimony, the trial judge is the ultimate arbiter of the credibility of the witnesses. *Cogswell v. Robertshaw Controls Co.*, 87 Wis.2d 243, 250, 274 N.W.2d 647, 650 (1979). The trial court's findings as to the substance of the omitted testimony are not clearly erroneous. Even if the trial court's findings were erroneous, we would not find the testimony either significant enough or substantial enough to order a new trial. The claimed inconsistencies in the two reports were minor; the substance of both statements was the same.

DeLeon also claims that the procedure used by the trial court prevents him from "fully assess[ing] the effectiveness or lack thereof of counsel." DeLeon seems to argue that if the trial counsel did not ask questions pointing to the inconsistencies in the two statements, as the trial court so found, then counsel was ineffective. We fail to see how the record, as reconstructed by the trial court, harms this defense; if anything, the trial court's decision benefits this defense. The trial court found that cross-examination on the inconsistency of the two statements did not take place. This provides a basis for the issue to be heard by this court.

In fact, we now turn to the claims regarding ineffective assistance of counsel. In Wisconsin, the standard for a claim of ineffective assistance of counsel is that counsel's representation was not equal to that which the ordinarily prudent lawyer, skilled and versed in criminal law, would give to a client who had privately retained his services. *State v. Davis*, 114 Wis.2d 252, 255, 338 N.W.2d 301, 302–03 (Ct. App. 1983); *State v. Felton*, 110 Wis.2d 485, 500–01, 329 N.W.2d 161, 168 (1983). Additionally, in order to find counsel was ineffective, it must be shown that the defendant was prejudiced by counsel's actions. *Felton* at 503, 329 N.W.2d at 169. Determinations of prejudice are to be made on a case-by-case basis. *Id.*

The determination of whether counsel was ineffective involves a mixed question of fact and law. *Davis* at 256, 338 N.W.2d at 303. The trial court must first make findings of fact regarding trial counsel's actions. Next, the trial court must find what an ordinarily prudent lawyer would have done. *Id.* These findings of fact will not be reversed unless they are clearly erroneous. Sec. 805.17(2), Stats.

The trial court must then ascertain whether the defense counsel's actions fulfill the legal standard for ineffective assistance of counsel. That is to say, the trial court must determine whether counsel's representation fails to match that of the ordinarily prudent lawyer. This determination is a question of law, and an appellate court on review owes no deference to the trial court on a question of law. *Davis* at 256, 338 N.W.2d at 303.

DeLeon first claims that counsel was ineffective in failing to cross-examine regarding the inconsistencies. We have already held that the alleged inconsistencies even had they been placed before the court by virtue of cross-examination were minor and would not have affected the trial court's findings. Second, DeLeon claims that counsel failed to impeach the ten-year-old victim by an inconsistent statement she made at the preliminary hearing. This failure to impeach can be justified as a legitimate trial tactic. Impeaching a child witness with a prior inconsistent statement is a double-edged sword—it may cast doubt upon the child's credibility; on the other hand, it may cast both the defendant and defense counsel in a negative light. At the post-conviction motion hearing, defense counsel remarked that he had evaluated the child as an "eloquent witness," demonstrating above average intelligence in recall and knowledge of events. It cannot be said that defense counsel's tactical decision not to impeach the witness was inadequate representation.

Third, DeLeon argues that counsel failed to interview prospective alibi witnesses. This was not due to a lack of diligence on defense counsel's part but to a lack of cooperation by the witnesses. Repeated attempts were made by defense counsel to contact the alibi witnesses—including the issuance of subpoenas. Trial counsel cannot be blamed for the witnesses' lack of cooperation.

Fourth, DeLeon claims that trial counsel failed to request an adjournment on the morning of trial so that an additional alibi witness, a former employer of DeLeon, could be found. The purpose of this testimony was to corroborate the alibi. Since De Leon was unable to give his attorney a name or address, it is entirely understandable why counsel refused to request an eleventh-hour continuance to find an unnamed, unknown witness.

Fifth, DeLeon argues that he was coerced by trial counsel into waiving his right to a jury trial. The record indicates that it was DeLeon who requested that the jury trial be waived and that he be tried to the bench, against this counsel's advice to the contrary. There is no evidence in the record that DeLeon was coerced; he personally waived his right to a jury trial with full knowledge of what he was relinquishing.

DeLeon also claims that he never effectively waived his right to a jury trial. We disagree. DeLeon indicated on the record, before the trial began, that he understood his waiver would result in a trial before a judge instead of twelve citizens and that the waiver of his right to a jury trial must be a voluntary act. DeLeon maintains that the waiver was not effectively made because the trial court dismissed the jury before informing DeLeon that the jurors' verdict would have to be unanimous. The record indicates that after the jury was dismissed, but before any trial proceedings had begun, the trial court decided to ask "a couple of additional questions . . . with respect to the jury waiver." The trial court then asked, "Mr. DeLeon, when you waived the jury this morning, did you under-

stand that the jury before they can return a verdict would have to be unanimous" and then went on to explain a unanimous verdict. "Did you understand that," the trial court inquired. DeLeon answered affirmatively. The trial court adequately advised DeLeon of the effects of his jury waiver. No error occurred.

*By the Court.*—Judgment affirmed.