DUGAN, J.
¶1 The State appeals the order of the postconviction court granting Robert James Pope, Jr.'s motion for a new trial.[1] Pope was convicted by a jury of two counts of first-degree intentional homicide, as a party to the crime, on May 31, 1996. See WIS. STAT. §§ 940.01 and 939.05 (1995-96).[2] On July 2, 1996, the trial court sentenced Pope to two terms of life imprisonment, without parole.[3]
¶2 Although trial counsel and Pope signed the WIS JI- CRIMINAL SM-33 (Information On Postconviction Relief)[4] indicating that Pope intended to seek postconviction relief and that trial counsel would timely file the required notice, there is no evidence that a notice of intent to pursue postconviction relief was timely filed. On September 16, 1997, Pope filed the first of his numerous pro se motions and appeals seeking to extend the time to file a notice of intent to seek postconviction relief and reinstatement of his direct appeal rights.[5] On July 21, 2014, Pope filed a Knight petition for a writ of habeas corpus .[6]
¶3 Ultimately, on August 16, 2016, the State and Pope's appellate counsel stipulated and jointly moved this court for reinstatement of Pope's direct appeal deadlines under WIS. STAT. RULE 809.30, and for an order extending the deadline to file a notice of intent to pursue postconviction relief and dismissal of his Knight petition. By order dated September 29, 2016, this court reinstated Pope's direct appeal rights and dismissed his petition for a writ of habeas corpus .[7]
¶4 On March 7, 2017, Pope filed a postconviction motion seeking a new trial on the grounds that the court reporters who transcribed the trial proceedings in 1996 no longer had their notes and, therefore, they could not provide transcripts for Pope's trial.[8] The postconviction court granted Pope's motion, and this appeal followed.
¶5 On appeal, the State argues that the postconviction court erred as a matter of law in granting a new trial based only on the absence of a trial transcript, without requiring Pope to make the requisite threshold showing that he has one or more colorable claims of "reversible" error that the transcripts might sustain.[9] We conclude that Pope has failed to assert a facially valid claim of error and, therefore, reverse the postconviction court's order and reinstate Pope's conviction.
BACKGROUND
¶6 On May 31, 1996, a jury found Pope guilty of two counts of first-degree intentional homicide, as a party to the crime.[10] The complaint alleged that Pope and four others-Derek Kramer, Israel Gross, Dax Reed, and Jennifer Radler (Pope's girlfriend at the time)-plotted to murder Joshua Viehland for supposedly threatening another woman they all knew. The five carried out their plan on September 27, 1995, when they lured Viehland and Anthony Gustafson to a house on North Astor Street in Milwaukee. When the two young men arrived, they were shot multiple times by Pope, Gross, and Kramer with handguns and a shotgun. Both died at the scene. Radler, who encouraged the shootings, drove Pope, Gross, and Kramer from the scene, and helped Pope dispose of the shotgun. Reed set up the shooting with a phone call luring Viehland and Gustafson to the Astor Street address.
¶7 Radler, Gross, and Kramer were each charged with two counts of first-degree intentional homicide while armed with a dangerous weapon, as a party to the crime. Reed was charged with one count of first-degree intentional homicide, as a party to the crime. Pope was still at large when the criminal complaint charging him with the two homicides was filed on January 12, 1996. He was arrested on January 29, 1996, four months after the murders.
¶8 Pope and Gross were the only defendants who proceeded to jury trials and both were found guilty. Kramer pled no contest to both counts, Radler pled guilty to both counts, and Reed pled guilty to one count. The State's theory, as reflected in statements that Pope's cohorts made to the police, was that Pope fired the first shot into Viehland's chest, his gun jammed, and then Kramer and Gross began shooting. Pope was sentenced to life without parole on July 2, 1996.
¶9 Pope and trial counsel signed a WIS JI- CRIMINAL SM-33 form at the close of sentencing. That form advised Pope of his right to file a postconviction motion or an appeal, and informed him that he had twenty days to file a formal notice of intent to pursue postconviction relief. That notice of intent would have triggered the procedures for obtaining the trial transcripts and for the appointment of counsel. See WIS. STAT. RULE 809.30(2)(c)-(h) (1995-96). Pope checked the box on the form stating that he "intends to seek postconviction relief. The required notice will be timely filed by trial counsel." Trial counsel assured the trial court that he would file the notice on Pope's behalf. Nothing was filed within those twenty days.
¶10 On September 16, 1997, fourteen and one-half months after sentencing, Pope filed in this court a pro se motion seeking to extend the time to file his notice of intent to pursue postconviction relief. On September 25, 1997, this court denied the motion stating, "Even assuming the truth of Pope's representations regarding the performance of trial counsel, Pope has failed to provide the court with a sufficient explanation as to why, when [trial] counsel failed to initiate postconviction proceedings timely, he did not attempt to commence postconviction proceedings on his own." We went on to say, "The court can see nothing in the motion that would warrant a fifteen-month delay in commencing postconviction proceedings." We then denied the motion because no good cause was shown.
¶11 On October 15, 1997, Pope filed a WIS. STAT. § 974.06 postconviction motion with the postconviction court, seeking to reinstate his appeal on the grounds that trial counsel was ineffective for not filing a notice of intent to pursue postconviction relief. The postconviction court denied the motion on October 20, 1997, and Pope filed a notice of appeal on November 5, 1997. While the appeal was pending, Pope filed a statement on transcript, which this court construed as a motion to waive all transcript fees based on indigence and remanded the matter to the postconviction court to determine whether Pope was entitled to the waiver of transcript fees. On December 15, 1997, the postconviction court held that Pope was not entitled to free transcripts because he "has not set forth an arguably meritorious claim for relief."
¶12 On December 23, 1997, this court issued an order notifying Pope that he had not timely filed a statement on transcript and directing him to do so within five days. Pope filed a statement on transcript on January 2, 1998. In it, Pope stated that the July 2, 1996 sentencing transcript "is the only transcripts [sic] necessary to prosecute this appeal." Pope filed another statement on transcript on January 20, 1998, stating: "All transcripts necessary are already on file." Accordingly, the circuit court clerk transmitted the remainder of the trial record, including the transcripts of both the preliminary and sentencing hearings, to this court.
¶13 The appeal proceeded. Pope notified this court that he would voluntarily dismiss his appeal if this court would reinstate his direct appeal rights. On February 3, 1999, this court issued an order denying an extension of time to file a direct appeal. Noting that we had already denied Pope this relief in September 1997 for his failure to show good cause, this court again denied relief for the same reason stating:
Now, sixteen months later, Pope again seeks an extension of that deadline. He again claims that trial counsel failed to follow his instructions. In now explaining his initial fifteen-month delay in seeking relief, Pope claims he was misinformed by a "jailhouse lawyer" as to the timetable for appeals. The court concludes that this explanation is simply insufficient and does not constitute good cause, especially when now coupled with an additional sixteen-month delay in offering this explanation. Further, Pope has failed to indicate in even the most cursory manner what issues he believes should be or could be raised in [ WIS. STAT. ] RULE 809.30 [ ] proceedings. Because Pope has not shown good cause for the extension he requests, the motion will be denied.
This court gave Pope ten days to decide whether he intended to voluntarily dismiss his appeal. We advised Pope that if he did not voluntarily dismiss the appeal by February 15, 1999, this court would dispose of the appeal on its merits. Pope did not dismiss his appeal.
¶14 In an opinion and order issued on March 5, 1999, this court affirmed the postconviction court's order denying Pope's WIS. STAT. § 974.06 motion. We held that Pope "waived his right to appeal" by failing "to provide any reason for his fifteen-month delay before seeking § 974.06 relief." Pope never provided any explanation for failing to file the notice of intent after having been "properly advised of his appeal rights," which raised a presumption that he waived his right to appeal. Pope did not rebut the presumption with proof of "exceptional circumstances or good cause." Pope's claimed reliance on his attorney to file the notice of intent does not "explain why he waited for over a year before taking some action."
¶15 Pope filed a pro se petition for review of our February 3, 1999 order with the Wisconsin Supreme Court on March 8, 1999. On March 10, 1999, the supreme court dismissed the petition as untimely filed. The court held that the petition was untimely because it was nothing more than Pope's belated challenge to this court's September 25, 1997 order denying Pope's initial motion for an extension of time to file a notice of intent to pursue postconviction relief. "The petition should have been filed within [thirty] days of September 25, 1997. Reconsideration requests do not serve to extend that time indefinitely." Pope then filed a petition for review of this court's March 5, 1999 decision. The supreme court denied review on June 7, 1999.
¶16 Four years later on June 20, 2003, Pope filed another WIS. STAT. § 974.06 motion in this court, again seeking an extension of time to file his notice of intent to pursue direct postconviction relief. In this motion, Pope admitted that "[t]hirteen months elapsed before Pope got concerned about his appeal and decided to write a letter of inquiry to the [Wisconsin State Public Defender's Office.]" This court summarily denied the motion on July 11, 2003, holding: "Now, Pope has returned to the court seeking the identical relief that was denied to him and reviewed in the prior litigation. This matter has been settled and will not be relitigated." That is where this case stood for the next eleven years.
¶17 On July 21, 2014, eighteen years after his sentencing, Pope filed a Knight petition for a writ of habeas corpus , seeking to reinstate his direct appeal rights on the ground that trial counsel was ineffective for not filing a notice of intent to pursue postconviction relief. On March 9, 2015, this Court ordered the State to respond. The State filed its response on May 21, 2015, and on September 23, 2015, Pope's trial counsel filed an affidavit in response to Pope's motion, stating that he could not recall the details of his representation of Pope and was unable to locate his case file.
¶18 On November 13, 2015, this court remanded this matter to the postconviction court for a fact-finding hearing to address Pope's claim. The postconviction court appointed counsel for Pope for the evidentiary hearing that was held on April 1, 2016.
¶19 The postconviction court, the Honorable J.D. Watts presiding, issued findings of facts on June 7 and June 28, 2016. The postconviction court found that Pope wrote two letters from jail on July 8 and July 18, 1996 to trial counsel, which state: "I'm writing in consider [sic] of my appeal and transcripts." It also found that there was no evidence that trial counsel filed a notice of intent to pursue postconviction relief.
¶20 The record, including the postconviction court's findings of fact, was transmitted to this court, and the Wisconsin State Public Defender's Office appointed appellate counsel to represent Pope in further proceedings on his petition. However, on August 16, 2016, based on the postconviction court's findings, the State and appellate counsel stipulated that Pope's direct appeal rights should be reinstated. Accordingly, on September 29, 2016, this court ordered that Pope's direct appeal rights be reinstated and dismissed his Knight petition for a writ of habeas corpus .
¶21 On March 7, 2017, nearly twenty-one years after his conviction, Pope filed his motion for direct postconviction relief pursuant to WIS. STAT. RULE 809.30. Before doing so, Pope's appellate counsel discovered that: (1) no trial transcripts had ever been ordered and prepared; and (2) the trial transcripts could not be prepared at that time because the court reporters' notes had been destroyed. Pope moved for a new trial due to the lack of transcripts.
¶22 The State opposed the motion relying on State v. Perry , 136 Wis. 2d 92, 401 N.W.2d 748 (1987). The State argued that Perry required Pope to show that he had a colorable claim of reviewable error that the missing transcripts might have supported and he failed to do so.
¶23 The postconviction court, the Honorable Jeffrey A. Conen presiding, rejected the State's arguments and at a hearing held on July 19, 2017, orally ordered a new trial. The court issued a written order to that effect on July 21, 2017.
¶24 This appeal followed. After considering the written briefs, this court ordered oral argument, which was heard on September 10, 2018.
DISCUSSION
¶25 The issue before this court is whether Pope met his burden to show that he is entitled to a new trial because a substantial portion of the trial transcripts are missing. The State argues that Pope did not meet his burden because he failed to assert a colorable claim of "reversible" error that might have been supported by the trial transcripts. We conclude that Pope failed to assert a facially valid claim of error and, therefore, reverse.
Applicable Law
¶26 In State v. DeLeon , 127 Wis. 2d 74, 80, 377 N.W.2d 635 (Ct. App. 1985), we held that
Before any inquiry concerning missing notes takes place, common sense demands that the appellant claim some reviewable error occurred during the missing portion of the trial. Obviously, the trial court need not conduct an inquiry if the appellant has no intention of alleging error in the missing portion of the proceedings. If, however, the trial court determines that the appellant has at least a facially valid claim of error, the inquiry should take place.
¶27 In Perry , 136 Wis. 2d at 101, our supreme court quoted the language in DeLeon stating, "The initial requirement under DeLeon is for the appellant to assert that the portion of the transcript that is missing would, if available, demonstrate a 'reviewable error.' " Perry , 136 Wis. 2d at 101 (footnote and citation omitted). It went on to note that the DeLeon court alternatively refers to this as "a facially valid claim of error." Perry , 136 Wis. 2d at 101 (citation omitted). Further, Perry explained that "By this terminology, we conclude that the court [of appeals] refers to an error which, were there evidence of it revealed in the transcript, might lend color to a claim of prejudicial error." See id . It then noted that the court of appeals below had referred to a "colorable need." See id. (citing State v. Perry , 128 Wis. 2d 297, 307, 381 N.W.2d 609 (Ct. App. 1985) ). The supreme court concluded that the terms were "synonymous in meaning." Perry , 136 Wis. 2d at 101.
¶28 Perry then reiterated that "DeLeon imposes a burden on the appellant to allege an 'error' in the portion of the trial omitted from the transcript." Perry , 136 Wis. 2d at 111. Further, the court stated, " 'Where, as here, a portion of the record is lost through no fault of the aggrieved party, that party should not be made to bear the burden of the loss.' " Id . (citation omitted).
¶29 The Perry court also emphasized that the only burden on the appellant is to show a " 'colorable need' as variously expressed in Perry [by the court of appeals] and DeLeon . He does not need to demonstrate or assume the burden of showing that the error alleged is prejudicial." Perry , 136 Wis. 2d at 108. Further, the court explained that "Yet, it must be clear that the error cannot be of such a trivial nature that it is clearly harmless. The error must be of potential substance and, depending upon the state of the record could it be produced, arguably prejudicial." Id .
Pope Failed to Assert a Facially Valid Claim of Error
¶30 In Perry , our supreme court made it clear that defendants, such as Pope, have the burden to assert that the portion of the transcript that is missing would, if available, demonstrate a facially valid claim of error. The Perry court also noted that there was a showing of prosecutorial misconduct and that "the segment of the proceedings where prejudicial conduct was likely to manifest itself-the closing arguments-was not available." See id. at 107.
¶31 Although Pope recognizes that pursuant to Perry , he has the initial burden to show a "colorable need," he asserts that the unavailability of the transcripts of the final pretrial conference and the entire trial proceedings completely deprives him of the ability to seek any review of his convictions. Unlike Perry , Pope has not identified any colorable claim of reviewable error in his postconviction motion. We review "only the allegations contained in the four corners of [Pope's] postconviction motion, and not any additional allegations that are contained in [Pope's] brief." See State v. Allen , 2004 WI 106, ¶27, 274 Wis. 2d 568, 682 N.W.2d 433.
¶32 As emphasized by the Perry court, Pope only needed to show a colorable need for the missing transcript. He does not need to demonstrate that the alleged error is prejudicial. However, Perry stated that the error cannot be trivial in nature such that it is clearly harmless. See id. , 136 Wis. 2d at 108. The burden is not substantial, but it must be met. Here, Pope did not allege any facially valid claim of error in his postconviction motion.
¶33 Over the period of twenty-one years since was he sentenced, Pope engaged in a prolonged postconviction and appellate process. He filed one postconviction motion with the postconviction court prior to the current motion, three motions in this court, one appeal to this court, one Knight petition, and two petitions for review with the Wisconsin Supreme Court. During the course of those proceedings, this court issued an order notifying Pope that he had not timely filed a statement of transcript in the appeal that was pending at that time, and directing him to do so within five days. In response, Pope filed a statement of transcript on January 2, 1998, stating that the July 2, 1996 sentencing transcript was the only transcript that was necessary to prosecute the appeal. On January 20, 1998, he filed another statement on transcript, stating that all transcripts necessary were already on file.
¶34 By filing the statements of transcript with this court, Pope represented to this court and the State that the only transcript that was necessary for his appeal was the sentencing transcript. The statements also reflect that as of January 2, 1998, Pope believed that his sentence involved a facially valid claim of error. The sentencing transcript is in the record. However, in his postconviction motion, Pope does not tell us what that claim might be. He failed to even assert that any facially valid error occurred during sentencing.
¶35 Moreover, the Perry court stated that it agreed with the court of appeals that "Appellant has done everything that reasonably could be expected in order to perfect his appeal." Id. , 136 Wis. 2d at 108. By contrast to Perry , Pope has not done everything that reasonably could be expected in order to perfect his appeal.
¶36 Pope's letter to trial counsel in July 1996, in which he asked about his "appeal and transcripts," shows that he was aware of the importance of the transcripts. Also, early during the course of Pope's postconviction proceedings, Pope was advised by the postconviction court in its December 15, 1997 order regarding transcript fees that he needed to set forth an arguably meritorious claim for relief. We provided similar advice in our December 3, 1999 order denying Pope's motion to extend time to file a notice of intent to pursue postconviction relief, stating that Pope failed to indicate, in even a cursory manner, what issue he believed should be raised in a WIS. STAT. RULE 809.30 proceeding.
¶37 Pope's only response to the postconviction court's statement and this court's statement was to tell this court and the State that the only transcript necessary for any appeal was the sentencing transcript. Unlike Perry , Pope has not done everything that reasonably could be expected in order to perfect his appeal.
¶38 Pope had the initial burden in his postconviction motion of claiming some facially valid claim of error. He failed to do so. Therefore, we reverse the postconviction court's order granting Pope's motion for a new trial and reinstate Pope's conviction.
By the Court .-Order reversed and the conviction is reinstated.
Not recommended for publication in the official reports.

A number of circuit court judges presided over the criminal action and postconviction proceedings. However, only the postconviction order of the Honorable Jeffery A. Conen is before this court on appeal.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted. The statutes under which Pope was charged are unchanged.

The sentencing transcript does not state whether the sentences were concurrent or consecutive, and the judgment of conviction does not reflect whether the sentences were concurrent or consecutive. The record is unclear as to the intent of the trial court.

The SM-33 form was replaced by the CR-233 Notice of Right to Seek Postconviction Relief form adopted by the Wisconsin Judicial Conference.

We provide a full description of the history of Pope's postconviction efforts below.

State v. Knight , 168 Wis. 2d 509, 484 N.W.2d 540 (1992).

The year of the order was incorrect and this court amended the year by an order dated October 4, 2016.

Even though court records in Class A felonies must be kept for seventy-five years after entry of final judgment, SCR 72.01(15), court reporters need only retain their notes for ten years after any hearing, SCR 72.01(47).

The State also argues that Pope is "guilty of laches" because he waited too long before letting anyone know he intended to seek direct postconviction relief. Because we decide the case on other grounds, we do not address the State's laches argument.

Although Pope was charged with committing the crime while armed with a dangerous weapon under Wis. Stat. § 939.63 (1995-96), the jury did not find that he committed either offense while using a dangerous weapon.