COURT OF APPEALS
DECISION
DATED AND FILED

July 5, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1905-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2017CF211

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ROBERT A. METCAFFE,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Racine County: WYNNE P. LAUFENBERG, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   Robert A. Metcaffe appeals from a judgment of conviction for sexual assault entered on a jury's verdict and from an order denying postconviction relief.  Metcaffe asserts that he is entitled to a new trial because the record is unclear as to whether an allegedly biased venireperson was struck from his jury panel.  Because the trial court's finding that defense counsel used a peremptory strike on the venireperson at issue is not clearly erroneous, and, separately, because Metcaffe has not met his burden of showing bias, we affirm.

¶2    Metcaffe impregnated a sixteen-year-old girl, Norah,[1] in 2008, when he was forty-three years old.  Due to his financial troubles, Metcaffe had been staying at Norah's house for several months as the guest of her mother and stepfather.  Eventually, Norah reported to police that Metcaffe had sexually assaulted her one night without her consent while he was living with her family.  In 2016, DNA testing confirmed that Norah's child—then almost seven years old—was biologically Metcaffe's, not her boyfriend's (as she had originally told her parents).  The State then charged Metcaffe with first-degree sexual assault of Norah without her consent and causing her to become pregnant, in violation of WIS. STAT. § 940.225(1)(a) (2021-22).[2]

¶3    Metcaffe's three-day jury trial took place in 2019.  Both Norah and Metcaffe testified.  Metcaffe admitted to having intercourse with Norah but testified that it was consensual.  The jury apparently believed Norah's version of the events and found Metcaffe guilty as charged after about ninety minutes of

---

[1] We use a pseudonym pursuant to the policy set forth in WIS. STAT. RULE § 809.86.

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

deliberation. The trial court sentenced him to fifteen years in prison, followed by fifteen years of extended supervision.

¶4 Metcaffe then filed a motion for postconviction relief, raising arguments related to the alleged bias of two potential jurors. Neither of these venirepersons were identified on the record, but both expressed thoughts related to the ages of Metcaffe and/or Norah in 2008, when Norah became pregnant, during voir dire. Metcaffe's trial counsel had the following conversation with the first unidentified venireperson:

> [Q.] Does any one here not believe that a 44 year old man and a 16 year old girl could actually have a relationship? If this was the reverse; where it was an older lady and a younger boy the same age, does that bother anybody in the—if that was a relationship? Would that bother anybody?
>
> A. Yeah, all that bothers me.
>
> Q. Okay. So you don't think that any relationship if there's a difference in age could actually exist?
>
> A. A difference in age, yeah, but not like that. Not that difference and not a child under 18.
>
> Q. Okay. So would you—In a scenario like that if just purely off the age; if a child came in and said, you know, it wasn't consensual but the older gentleman said it was consensual, you wouldn't believe or at least hear out the evidence?
>
> A. I don't know. I don't think so.
>
> Q. You don't think so. So you wouldn't be able to fairly listen to all the evidence?
>
> A. I don't know. I got four kids and no.

At that point, a second unidentified venireperson interjected:

> A.  I'm having a little bit of an issue with it as well.  Not the age difference.  He could be 88 and she could be 20 or 25.  That's not the issue.  The issue is that she's under 18 and 16.  That's—It's not the age difference.  It's just her age actually.

The trial court then conducted a sidebar, which the court later summarized as relating to what it viewed as Metcaffe's counsel's "irrelevant" and "not … really an appropriate" line of questioning.  Counsel for both sides declined the court's invitation to supplement the record with respect to this sidebar.

¶5      In his motion for postconviction relief, Metcaffe requested that the court reconstruct the record to determine the identity of the two venirepersons quoted above who "gave responses indicating an inability to fairly decide the case on the evidence."  He asserted that he was entitled to a new trial if either of these individuals sat on the jury or if the record could not be reconstructed.  He also claimed ineffective assistance of counsel to the extent his attorney did not strike the two venirepersons at issue.

¶6      The trial court conducted an evidentiary hearing at which Metcaffe's trial counsel testified.  With respect to the first venireperson—the one who said, "I got four kids"—counsel testified that "it was the first strike that [he] struck in that trial."  The court noted that none of the three potential jurors who said they had four children during general voir dire questions served on the jury.

¶7      With respect to the second venireperson—the one who interjected that she[3] also had "a little bit of an issue" with Norah's age—counsel could not initially recall whether she sat on Metcaffe's jury.  Then, after reviewing the

---

[3] The record from the trial makes evident that this venireperson was a woman; the trial court referred to this person as "she" during voir dire.

4

transcript, he believed that this person was "that female Hispanic juror that [he] did strike." Although he did not remember her name, he first said that he thought she was Hispanic because of her name and appearance and that he "knew that that was one of the jurors that [he was] going to strike because of the response." After stating several times that this venireperson "was going to be struck" with a peremptory strike because her response "just [came] out of nowhere" when he was conversing with another individual, counsel was asked to look at the juror list. He stated that he used his first peremptory strike on a male venireperson (one who had four children) and his second and fifth strikes on women. Although he did not testify that he perceived either of these women's names as Hispanic, he stated, "I just want to be very clear, that the Hispanic—like I said, she had black hair, and how she reacted with her answers made me just think she was Hispanic." He reiterated that although he could not identify which of the venirepersons that he struck was the one who had "a little bit of an issue" with Norah's age, he "[could] tell [the court] the person that gave that answer was a person that [he] struck" and that "that person was struck." In response to further questioning about whether he definitely struck the venireperson at issue, counsel said:

> I said she basically appeared to me to be Hispanic, and I indicated that she had black hair…. I told you that by her reply, that's why I believe that she was Hispanic, so—and that's what I'm indicating to you today. I'm not going to change it. That's my—that was my view of that juror, and basically, no matter what, that juror was going to be struck.

¶8      The trial court denied Metcaffe's motion on the basis of its factual finding that Metcaffe's trial counsel "utilized his five peremptory challenges in a manner to exclude the two jurors that were responding about the age of the victim and the age of the defendant." Metcaffe conceded that the first venireperson (with four children) did not serve as a juror in his posthearing brief to the trial court. As

5

for the second venireperson, the court noted in its written decision that "[Metcaffe's trial counsel] testified, unequivocally, that he struck the female juror that started to respond about the ages of the victim and defendant" and that he "was adamant that based on her unsolicited response that he was going to strike her from the jury panel." Because it found that neither venireperson at issue actually served on the jury, it determined that Metcaffe did not receive ineffective assistance of counsel and was not entitled to a new trial. Metcaffe appeals, basing his request for a new trial on the second venireperson alone. He asserts that he is entitled to a new trial because the court's finding that this venireperson did not serve on his jury is not supported by the record.

¶9 As both parties acknowledge, the Wisconsin Constitution guarantees a party the absolute right to a meaningful appeal. WIS. CONST. art. I, § 21(1); *State v. Perry*, 136 Wis. 2d 92, 99, 401 N.W.2d 748 (1987). Under *Perry*, a meaningful appeal requires "a full transcript—or a functionally equivalent substitute that, in a criminal case, beyond a reasonable doubt, portrays in a way that is meaningful to the particular appeal exactly what happened in the course of trial." 136 Wis. 2d at 99. Where an appellant asserts that the missing portion of a transcript would show a reviewable error, the trial court must determine whether the missing portion of the record can be reconstructed. *See id.* at 101-02; *State v. DeLeon*, 127 Wis. 2d 74, 80-81, 377 N.W.2d 635 (Ct. App. 1985).

¶10 Metcaffe argues that the record in his case is incomplete and deprives him of a meaningful appeal because it is missing the identity of the second venireperson who allegedly expressed bias against him and who he

6

believes may have served on his jury.[4]  We will assume for the purposes of this appeal that the trial court's duty to reconstruct the record can be triggered by a transcript that is arguably "full," albeit unclear as to who said what—but the only cases Metcaffe cites deal with situations in which the transcript or portions thereof were actually lost.  *See Perry*, 136 Wis. 2d at 96 (discussing reconstruction when notes from trial were lost in the mail before they could be transcribed); *DeLeon*, 127 Wis. 2d at 76 (discussing reconstruction when notes comprising fifteen minutes of trial testimony were lost); *see also State v. Pope*, 2019 WI 106, ¶3, 389 Wis. 2d 390, 936 N.W.2d 606 (analyzing need for new trial when entire transcript was unavailable due to appellant's delay and the passage of time).

¶11    In attempting to reconstruct a record, a trial court may conduct hearings and consult with trial counsel and other sources.  *DeLeon*, 127 Wis. 2d at 81-82.  The process may require a trial court to make factual findings, which we review under the "clearly erroneous" standard.  *Id.* at 82; *see also State v. Raflik*, 2001 WI 129, ¶36, 248 Wis. 2d 593, 636 N.W.2d 690.  Here, the trial court attempted to reconstruct the record by taking testimony from Metcaffe's trial counsel.  It made the factual finding that the unidentified female who expressed a "little bit of an issue" with the victim's age did not serve on Metcaffe's jury. Metcaffe asserts that this finding was clearly erroneous, arguing that it "does not

---

[4] We encourage attorneys and trial courts to identify venirepersons by name or number on the record and to have sidebars transcribed.  Had that been done in this case, there would be no risk of wasted court and party resources in conducting a second trial, not to mention the potential toll on victims and witnesses who would be asked to testify twice.  That said, the failure to identify the venirepersons on the record in this particular case does not necessitate a new trial.

square" with counsel's inability to identify the woman by name and relying on the fact that a person with a Hispanic last name—Sanchez—was seated on the jury.

¶12     We disagree that the trial court's finding was against "the great weight and clear preponderance of the evidence." *See State v. Wiskerchen*, 2019 WI 1, ¶17, 385 Wis. 2d 120, 921 N.W.2d 730 (setting forth standard for clear error review).  On the contrary, this finding was supported by Metcaffe's trial counsel's repeated testimony that he struck the venireperson at issue—testimony that the court characterized as "unequivocal[]" and "adamant." *See State v. Harvey*, 139 Wis. 2d 353, 377-78, 407 N.W.2d 235 (1987) ("These credibility determinations are best reserved to the trial court ….").  Counsel retracted his initial statement that he may have thought the venireperson at issue was Hispanic based on her name and clarified that it was her appearance and responses that gave him that impression.  There was no evidence presented to counter his repeated testimony that this person "was struck" from the potential jurors.

¶13     The ultimate question of whether the reconstruction of the record is sufficient for purposes of a meaningful appeal is a legal question that we review de novo.  *Raflik*, 248 Wis. 2d 593, ¶32.  The issue that Metcaffe wished to pursue on appeal was whether a biased juror sat on his jury.  We conclude as a matter of law that the trial court's reconstruction of the record is sufficient to make the record "meaningful to the particular appeal." *See Perry*, 136 Wis. 2d at 99.  The identity of the struck venireperson is not necessary in view of the trial court's finding— which we affirm—that she did not serve on the jury.

¶14     Moreover, our supreme court in *Perry* recognized that errors in transcript preparation or production, like errors in trial procedure, are subject to the harmless error rule.  136 Wis. 2d at 100.  Here, Metcaffe has alleged that the

8

second unidentified venireperson was biased against him based on her comment that she was "having a little bit of an issue with" Norah's age. But this statement does not demonstrate subjective bias or an inability to impartially hear and evaluate the evidence at trial per se. *See State v. Oswald*, 2000 WI App 2, ¶19, 232 Wis. 2d 62, 606 N.W.2d 207 (1999) ("A prospective juror is subjectively biased if the record reflects that the juror is not a reasonable person who is sincerely willing to set aside any opinion or prior knowledge that the prospective juror might have."). Metcaffe's bald assertion is not enough to overcome the presumption that jurors are impartial. *See State v. Funk*, 2011 WI 62, ¶31, 335 Wis. 2d 369, 799 N.W.2d 421 ("The party challenging a juror's impartiality bears the burden of rebutting [the presumption of juror impartiality] and proving bias."). Thus, even if the trial court's factual finding were clearly erroneous, we would affirm.

¶15 For the foregoing reasons, we affirm Metcaffe's judgment of conviction and the trial court's order denying postconviction relief.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.