**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**May 31, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP2079-CR**

Cir. Ct. No. 2018CF1745

STATE OF WISCONSIN

**IN COURT OF APPEALS**
**DISTRICT IV**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

LES PAUL HENDERSON,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Dane County: JILL J. KAROFSKY and SARAH B. O'BRIEN, Judges. *Reversed and cause remanded with directions*.

Before Blanchard, Graham, and Nashold, JJ.

¶1 GRAHAM, J. Les Paul Henderson was convicted of crimes including causing mental harm to a child, and he was sentenced to a bifurcated sentence of initial confinement and extended supervision. The original judgment

of conviction, entered in 2020, stated that he was eligible to participate in two department of corrections programs during his term of initial confinement. He appeals a 2023 circuit court order that denied his motion to vacate an order, entered three years after he was sentenced, that resulted in an amendment to the judgment of conviction, which now states that Henderson is not eligible to participate in the programs. Henderson argues that the original judgment of conviction should not have been amended for one of two reasons. His primary argument is that the court that sentenced him in 2020 unambiguously determined that he is eligible to participate in the programs. Alternatively, he argues that, if the sentencing court did not determine that he is eligible for the programs, it made no determination at all about his eligibility, and that determination must now be made in the first instance.[1]

¶2 We reject Henderson's primary argument that the sentencing court intended to declare him eligible to participate in the programs, and further conclude that the sentencing court did not consider his eligibility to participate in the programs at all. That is, we agree with Henderson's alternative argument— because the sentencing court never considered Henderson's eligibility to participate in the programs, it did not in its discretion determine that he is ineligible to participate in the programs. We therefore conclude that the amended judgment and the order denying Henderson's motion to vacate the order that resulted in the amended judgment should be reversed and that, on remand, the

---

[1] The Honorable Jill J. Karofsky presided over Henderson's sentencing in 2020, and the Honorable Sarah B. O'Brien, Reserve Judge, presided over Henderson's 2023 motion to vacate the order that amended that original judgment of conviction. For ease of reference, we refer to Judge Karofsky as the "sentencing court" and to Judge O'Brien as the "circuit court."

circuit court should hold proceedings to determine Henderson's eligibility to participate.

## BACKGROUND

¶3      The State charged Henderson with various counts in connection with his sexual abuse of two young girls.  As part of a plea agreement, Henderson pled guilty to one count of causing mental harm to a child in violation of WIS. STAT. § 948.04(1) (2021-22),[2] and one count of fourth-degree sexual assault in violation of WIS. STAT. § 940.225(3m).

¶4      Prior to sentencing, an employee of the state department of corrections (DOC) conducted a presentence investigation and prepared a presentence investigation report (PSI).  The preparer checked a box on the PSI indicating that Henderson was not "statutorily eligible" for two DOC programs, the substance abuse program and the challenge incarceration program, during his term of initial confinement.  *See* WIS. STAT. § 302.05 (describing the substance abuse program, which is sometimes referred to as "SAP," the "earned release program," or "ERP");[3] WIS. STAT. § 302.045 (describing the challenge incarceration program, which is sometimes referred to as "CIP" or "boot camp").[4]

---

[2] All references to the Wisconsin Statutes are to the 2021-22 version.

[3] WISCONSIN STAT. § 302.05(1)(b) provides, in part:  "The department of corrections and the department of health services shall, at any correctional facility the departments determine is appropriate, provide a substance abuse treatment program for inmates for the purposes of the program described in sub. (3)."

[4] WISCONSIN STAT. § 302.045(1) provides, in part:  "The department shall provide a challenge incarceration program for inmates selected to participate under sub. (2).  The program shall provide participants with manual labor, personal development counseling, substance abuse treatment and education, military drill and ceremony, counseling, and strenuous physical exercise, for participants who have not attained the age of 30 as of the date on which they begin

(continued)

¶5 It is now undisputed that the PSI's assertion about Henderson's eligibility for these programs was incorrect, at least in part. As to the count of causing mental harm to a child, Henderson was statutorily eligible, at the sentencing court's discretion, to participate in both programs. *See* WIS. STAT. § 973.01(3g), (3m).[5]

¶6 When sentencing a defendant who is statutorily eligible for the substance abuse program or the challenge incarceration program, the sentencing court must exercise its discretion on whether to declare the defendant eligible to participate in the program, and the judgment of conviction is to reflect the court's determination. *See **State v. Owens***, 2006 WI App 75, ¶9, 291 Wis. 2d 229, 713 N.W.2d 187 (the sentencing court must determine the defendant's eligibility to participate in the substance abuse program as part of its exercise of sentencing

---

participating in the program, or age-appropriate strenuous physical exercise, for all other participants, in preparation for release on parole or extended supervision."

[5] WISCONSIN STAT. § 973.01(3g), which addresses eligibility for the substance abuse program, provides: "When imposing a bifurcated sentence under this section on a person convicted of a crime other than a crime specified in [WIS. STAT.] ch. 940 or [WIS. STAT. §] 941.29(1g)(a); a crime specified in [§] 941.29(1g)(b), not including [WIS. STAT. §§] 951.02, 951.08, 951.09, or 951.095; or a crime under [WIS. STAT. §] 948.02(3), 948.055, 948.075, or 948.095, the court shall, as part of the exercise of its sentencing discretion, decide whether the person being sentenced is eligible or ineligible to participate in the earned release program under [WIS. STAT. §] 302.05(3) during the term of confinement in prison portion of the bifurcated sentence." *See also* § 302.05(3)(a).

WISCONSIN STAT. § 973.01(3m), which addresses eligibility for the challenge incarceration program, provides: "When imposing a bifurcated sentence under this section on a person convicted of a crime other than a crime specified in [WIS. STAT.] ch. 940 or [WIS. STAT. §] 941.29(1g)(a); a crime specified in [§] 941.29(1g)(b), not including [WIS. STAT. §] 951.02, 951.08, 951.09, or 951.095; or a crime under [WIS. STAT. §] 948.02(3), 948.055, 948.075, or 948.095, the court shall, as part of the exercise of its sentencing discretion, decide whether the person being sentenced is eligible or ineligible for the challenge incarceration program under [WIS. STAT. §] 302.045 during the term of confinement in prison portion of the bifurcated sentence." *See also* § 302.045(2).

4

discretion); ***State v. Steele***, 2001 WI App 160, ¶8, 246 Wis. 2d 744, 632 N.W.2d 112 (the sentencing court must determine the defendant's eligibility to participate in the challenge incarceration program as part of its exercise of sentencing discretion). This discretionary determination can have significant consequences for a defendant. If a sentencing court declares a defendant eligible to participate in one of the programs and if the DOC exercises its own discretion to place the defendant in the program, then the defendant's remaining period of initial confinement will be converted to extended supervision after the defendant successfully completes the program. *See **Owens***, 291 Wis. 2d 229, ¶5 (citing WIS. STAT. § 302.05(3)(c)2.). This means that the defendant will be released on extended supervision earlier than the defendant would have been released had the defendant not been made eligible for and completed the program. *See **State v. Lynch***, 2006 WI App 231, ¶¶4, 18, 297 Wis. 2d 51, 724 N.W.2d 656 (discussing the early release feature of the substance abuse program); ***State v. Schladweiler***, 2009 WI App 177, ¶8, 322 Wis. 2d 642, 777 N.W.2d 114, *abrogated on other grounds by **State v. Harbor***, 333 Wis. 2d 53, 797 N.W.2d 828 (discussing the early release feature of the challenge incarceration program).

¶7 In Henderson's case, the sentencing court held the sentencing hearing in January 2020. On the count of causing mental harm to a child, the court sentenced Henderson to a bifurcated sentence of ten years, consisting of five years of initial confinement followed by five years of extended supervision. On the count of fourth degree sexual assault, the court sentenced Henderson to nine months in jail, to be served concurrently with his sentence for causing mental

harm to a child.[6]  The court ordered a mental health assessment, sex offender registration, and sex offender treatment, among other things.  Neither party mentioned the substance abuse program or the challenge incarceration program at any point during the hearing, and the court did not make any express determination during the hearing about Henderson's eligibility to participate in either program.

¶8     On the same day that Henderson was sentenced, the sentencing court's clerk prepared written documents that memorialized the sentencing decision.  In these documents, the clerk indicated that Henderson is eligible for both programs.  Specifically, the minute sheet and the written explanation of determinate sentence form, both prepared by the clerk on the day of sentencing, contain check marks indicating that Henderson is eligible for the programs.  Likewise, the original judgment of conviction on the mental harm charge, which was prepared based on the minute sheet and explanation of sentence form, indicates in two places that Henderson "is eligible" for the programs.

¶9     More than three years later in June 2023, Henderson began to receive programming through the substance abuse program at his correctional institution.  Shortly thereafter, the State filed a motion to correct the judgment of conviction pursuant to WIS. STAT. § 972.13(4) and *State v. Prihoda*, 2000 WI 123, ¶17, 239 Wis. 2d 244, 618 N.W.2d 857.  The State argued that the sentencing court had not made any determination about Henderson's eligibility to participate in the substance abuse program or the challenge incarceration program, and that

---

[6] In a related case that was addressed in the same proceedings, Dane County case No. 2018CF1756, Henderson had also pled guilty to one count of fourth-degree sexual assault and was sentenced to nine months of concurrent jail time.

the judgment of conviction should be corrected to reflect that Henderson is not eligible to participate in those programs. According to the State, the notations about program eligibility on the judgment of conviction were clerical errors, and a circuit court has authority to correct clerical errors at any time.

¶10 Over the next several days, a series of amended judgments were entered pertaining to Henderson's conviction for causing mental harm to a child.[7] The matter was then referred to a reserve judge, the Honorable Mark P. Frankel, who entered an order that provided as follows: "Because the sentencing transcript does not contain a reference to approval for eligibility to either the Challenge Incarceration Program or the Substance Abuse Program, the Court orders that [Henderson] is NOT currently eligible for [these programs]. [Henderson] may file a motion seeking eligibility for either of these programs, together with the supporting basis for the motion." Consistent with Judge Frankel's order, the clerk's office entered yet another amended judgment of conviction on July 18, 2023, which reflects that Henderson is not eligible to participate in either program.[8]

¶11 Through counsel, Henderson filed a motion to vacate Judge Frankel's order and to reinstate his eligibility to participate in the programs, or,

---

[7] At the time the State filed its motion, the branch of the Dane County Circuit Court that had sentenced Henderson was vacant, and several reserve judges were assigned to cover pending matters in that branch. Two days after the motion was filed, an amended judgment of conviction was entered that reflected that Henderson was not eligible to participate in the programs; the following day, another amended judgment of conviction was entered that reflected that Henderson was eligible. We discuss these amendments no further because they were superseded by the amended judgment, discussed above, that is the subject of Henderson's motion to vacate.

[8] We note that the final amended judgment that is the subject of this appeal lists the Honorable Jill Karofsky as the responsible court official, even though Judge Karofsky was no longer a circuit court judge in 2023 and therefore could not have been responsible for its entry.

alternatively, to stay the order to allow for briefing on his eligibility to participate in the programs. In his motion, Henderson acknowledged that his eligibility to participate in these programs had not been addressed at the sentencing hearing, that neither party argued for or against eligibility, and that the sentencing court did not expressly weigh in on that issue during the hearing. However, Henderson noted that "shortly after the hearing," the three court documents discussed above—the minute sheet, the written explanation of Henderson's determinate sentence, and the judgment of conviction itself—were entered into the record. He argued that these documents, all of which stated that he was eligible to participate in the programs, "captur[ed] the wishes of the [sentencing] court" and were not contradicted by anything in the record. In the alternative, Henderson argued that Judge Frankel's order should be stayed "to allow[] time for further briefing [and] if necessary, a hearing on the issue." To that end, Henderson asked that he be allowed "to continue his programming until the matter [was] resolved."

¶12 The State filed a written response, which focused on the sentencing court's remarks during the sentencing hearing. It argued that these remarks showed that the court considered Henderson's offenses to be "incredibly grave and serious" and that Henderson had exhibited "manipulative," "grooming," and "predatory" behavior towards the victims, and that the court had followed the State's sentencing recommendation, which it determined to be "appropriate." The State implied that, by sentencing Henderson to five years of initial confinement, and by not expressly declaring Henderson to be eligible to participate in either the substance abuse program or the challenge incarceration program, the court unambiguously decided that he was ineligible to participate in the programs.

¶13 Henderson's motion was scheduled for a hearing, at which the circuit court began by making a record about information the circuit court had

received that explained how the judgment of conviction and other documents came to reflect that Henderson was eligible for the programs. The circuit court reported that, at the time that Henderson was sentenced, the sentencing court's clerk had mistakenly believed that eligibility for those programs was a "scrivener's decision" to make, and the clerk had marked Henderson as eligible because he was statutorily eligible for the programs. According to the circuit court, the marks on the documents "were not made by a Judge or approved by a Judge."

¶14    The circuit court initially indicated an intention to take judicial notice of these facts, but Henderson's attorney objected and asked that there be testimony on those factual issues. The clerk was sworn in and testified about her role in preparing the minute sheet, the written explanation of Henderson's determinate sentence, and the judgment of conviction. We discuss the clerk's testimony further in the discussion section below; for now, it suffices to say that the clerk did not appear to have a specific memory of Henderson's sentencing. However, based on her review of the transcript, the clerk testified that that she did not believe that she had any conversation about Henderson's eligibility to participate in the programs with the sentencing court. Instead, she believed that at the time, she was operating under a misunderstanding that the checkboxes on the forms pertained to a defendant's statutory eligibility for programming, and that no independent exercise of sentencing discretion was required.

¶15    At the close of the hearing, the circuit court denied Henderson's motion. In so doing, the court found that "[t]he transcript [from sentencing] is clear, that [the sentencing court] ordered a five-year prison sentence with five years of supervised release," and that it "did not make any finding that the defendant needed an AODA assessment or treatment, despite the fact that [the

sentencing court] dealt with conditions of extended supervision and probation." The circuit court further found that the three contemporaneous documents, all of which state that Henderson is eligible for the programs, stemmed from a single act by the clerk to mark him eligible for the programs. Turning to the clerk's testimony on that point, the circuit court acknowledged that it was "somewhat ambiguous," but the court found "her testimony as a whole to be reliable, that she, in fact, filled out [the checkboxes] without consulting the Judge."

¶16 The circuit court then found that "nothing in this record" suggested that the sentencing court had considered Henderson's eligibility to participate in the programs—possibly because the PSI indicated that Henderson was not statutorily eligible:

> I agree with [the prosecutor] that there is nothing in this record that suggests that [the sentencing court] considered those programs. I find it interesting that the PSI said that [Henderson] was ineligible. I don't want to speculate that that's why [the sentencing court] didn't address it and defense counsel didn't address it or the State; none of them addressed it at the time of the hearing. But it is part of the record here.

That is, the circuit court expressly rejected Henderson's argument that the sentencing court intended to declare him eligible to participate in the programs.

¶17 Then, shortly after finding that the sentencing court had not considered Henderson's eligibility to participate in the programs, the circuit court said: "I am satisfied that the evidence is strong that [the sentencing court] intended that the defendant not be eligible for those programs." The circuit court determined that the sentencing court's original intent was reflected in the amended judgment of conviction, which had been entered based on Judge Frankel's order, and therefore, "in [the circuit court's] mind, nothing else ha[d] to be done."

¶18   In response to this ruling, Henderson's counsel asked the circuit court to exercise its discretion and determine that Henderson is eligible to participate in the programs.  The court considered the request to be one for sentence modification, and it denied the request on the ground that no written motion for sentence modification had been filed.  Henderson appeals.

## DISCUSSION

¶19   As stated, it is currently undisputed that, on the count of causing mental harm to a child, Henderson is statutorily eligible for the substance abuse and challenge incarceration programs.  It is further undisputed that, when a defendant is statutorily eligible for those programs, a sentencing court is required to exercise its discretion on whether or not to declare the defendant eligible to participate in programming.  *See* WIS. STAT. § 973.01 (3g) and (3m); *see also* *Owens*, 291 Wis. 2d 229, ¶9 (addressing the substance abuse program); *Schladweiler*, 322 Wis. 2d 642, ¶¶1, 9-10 (addressing the challenge incarceration program).

¶20   On appeal, Henderson asserts that the circuit court erred in determining that the sentencing court intended to declare him ineligible to participate in programming.  In support, he advances two alternative arguments. Henderson's primary argument is that the record, as a whole, reflects the sentencing court's intention to declare him eligible to participate in the programs. In the alternative, Henderson argues, if the record does not reflect that the sentencing court intended to declare him eligible to participate, then the record, as a whole, reflects the sentencing court's failure to consider the issue at all.  As we now explain, we reject Henderson's primary argument on appeal, but we agree with his alternative argument.

**I.**

¶21    We begin with Henderson's argument that the record, as a whole, reflects the sentencing court's intention that he be eligible to participate in the substance abuse and challenge incarceration programs.

¶22    The parties agree about the law that governs the interpretation of a court's sentencing decision. Generally speaking, when there is a conflict between an unambiguous oral pronouncement and an unambiguous written judgment of conviction, the oral pronouncement controls. *See **State v. Perry***, 136 Wis. 2d 92, 114, 401 N.W.2d 748 (1987). However, in cases in which there is a conflict and the court's oral pronouncement is ambiguous, the oral pronouncement does not control. ***State v. Lipke***, 186 Wis. 2d 358, 364-65, 521 N.W.2d 444 (Ct. App. 1994). Instead, we look to the record as a whole, including the written judgment of conviction, to ascertain the sentencing court's intention. ***Id.***; ***State v. Brown***, 150 Wis. 2d 636, 641-42, 443 N.W.2d 19 (Ct. App. 1989); ***State v. Oglesby***, 2006 WI App 95, ¶21, 292 Wis. 2d 716, 715 N.W.2d 727.

¶23    Here, the parties agree that there is a conflict between the sentencing court's oral pronouncement and Henderson's original judgment of conviction—the oral pronouncement is silent about Henderson's eligibility to participate, yet the original judgment of conviction stated that he was eligible to participate in both programs. The parties further agree that the sentencing court's silence during sentencing renders its oral pronouncement ambiguous, because WIS. STAT. § 937.01(3g) and (3m) required the court to make a decision on Henderson's eligibility to participate in the programs. *See **Brown***, 150 Wis. 2d at 642; ***Lipke***, 186 Wis. 2d at 364-65 (the court's "failure to specify at sentencing whether the

12

sentence would … be concurrent or consecutive creates an ambiguity because the statute obliges the court to make a selection").

¶24    Henderson argues that, because the sentencing court's oral pronouncement is ambiguous, the written judgment of conviction along with two other contemporaneous documents control, and these documents unambiguously show that the sentencing court intended to declare Henderson eligible to participate in the programs.  Had the circuit court not taken any evidence about the sentencing court's intent, we might agree with Henderson.  As in **Brown** and **Lipke**, the oral pronouncement's silence on an issue the court was required to address results in ambiguity, and the contemporaneous written documents could be considered to resolve that ambiguity.  Here, however, the circuit court did take evidence on the sentencing court's intent and, based on that evidence, which is now part of the record, the circuit court determined that the contemporaneous written documents did not reflect the sentencing court's intent.

¶25    On appeal, Henderson appears to suggest that the circuit court was required to limit its review to the record that was created at the time of his sentencing.  That is, according to Henderson, the circuit court was required to accept the judgment of conviction and other contemporaneous documents as the only evidence of the sentencing court's intent, and the circuit court erred by looking beyond those documents to consider new testimony on whether those documents reflected the sentencing court's intent.

¶26    However, Henderson did not object to the circuit court's decision to take additional evidence on the sentencing court's intent during the hearing, and he does not now develop an argument that the court's decision to do so was error.  At most, he suggests that the circuit court's decision to take additional evidence

was "questionable," and that he is "unaware of any case in which introduction of facts outside the record has been approved." At the same time, Henderson does not point to any case that has prohibited a circuit court from taking additional evidence about the sentencing court's intent. *See **State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (we need not consider arguments that are unsupported by reference to legal authority). We decline to reverse the circuit court's determination on this basis.

¶27     Henderson also argues that, even if it was permissible for the circuit court to take testimony from the sentencing court's clerk, the findings that the circuit court made based on that testimony are clearly erroneous. Henderson contends that the clerk did not appear to specifically remember Henderson's sentencing, and he points out that the clerk acknowledged it was "possible" that the sentencing judge "could have" told her to mark Henderson as eligible to participate in the programs.

¶28     We reject Henderson's argument and conclude that the circuit court's findings are not clearly erroneous. Although the court acknowledged that the clerk's testimony was "somewhat ambiguous," the clerk testified that she was the one who made the marks about Henderson's eligibility for the programs on the minute sheet and the written explanation of sentence form. The clerk further testified that she did not recall that the sentencing court "ever indicat[ed]" to her that the court "wanted [the clerk] to find Mr. Henderson eligible for either [program]." Additionally, the clerk testified that, based on her training, she had at one time believed that defendants were eligible for the programs if they were 40 years old or younger and were not being sentenced on a WIS. STAT. ch. 940 offense, and she thought she marked Henderson eligible for the programs "based on [her] belief that eligibility was determined by the statutory factors as opposed

14

to a Judge making a determination under the statute [that] he was eligible." At some point, the clerk testified, she learned that the sentencing court had to make a specific determination about a defendant's eligibility for the programs, and that she "learned her lesson" that she "can't just check those boxes off on these documents" without the sentencing court's approval.

¶29 The circuit court credited the clerk's testimony that she did not consult with the sentencing court before she marked Henderson eligible for the programs, as well as her testimony that, when asked about the case by her supervisor, the clerk admitted that she "filled out those boxes" without the sentencing court's permission. Credibility determinations are uniquely within the province of the court. *See Plesko v. Figgie Int'l*, 190 Wis. 2d 764, 775, 528 N.W.2d 446 (Ct. App. 1994). Here, the circuit court's credibility determination is not clearly erroneous—indeed, it is buttressed by the court's finding that there is "nothing in this record" to support the premise that the sentencing court considered the issue of Henderson's eligibility to participate at all, much less that the sentencing court communicated any such determination about eligibility to the clerk.

¶30 For these reasons, we agree with the circuit court's determination that the record, as a whole, does not establish that the sentencing court intended to declare Henderson eligible to participate in the programs.

**II.**

¶31 We now turn to Henderson's alternative argument—that, if the record as a whole does not establish that the sentencing court intended to declare him eligible to participate in the programs, then the record demonstrates that the court failed to consider his eligibility at all. We agree, and we therefore conclude

that the circuit court's finding that the sentencing court intended to declare Henderson ineligible to participate in programming is clearly erroneous.

¶32 Here, based on the absence of any on-the-record discussion of the substance abuse program or challenge incarceration program at sentencing, the circuit court appears to have inferred that the sentencing court made an implicit determination that Henderson would be ineligible to participate in the programs. Yet, this is not a situation in which it can be inferred from the sentencing court's silence that the court made an implicit determination about Henderson's eligibility. *See **Town of Avon v. Oliver***, 2002 WI App 97, ¶23, 253 Wis. 2d 647, 644 N.W.2d 260 (explaining that, in some situations, we will assume that a court "implicitly made those findings necessary to support its decision"). The absence of an eligibility determination is not the same as a determination that Henderson is ineligible.

¶33 As stated, a sentencing court is required to make a determination about a defendant's eligibility to participate in programming at sentencing, ***Owens***, 291 Wis. 2d 229, ¶9; ***Schladweiler***, 322 Wis. 2d 642, ¶¶1, 9-10, and here, the circuit court expressly found that the sentencing court did not consider Henderson's eligibility to participate in these programs at all. There is no evidence in the record—strong or otherwise—that the sentencing court "intended that [Henderson] not be eligible for those programs," and the circuit court's decision to the contrary is clearly erroneous.

¶34 Although the State conceded that the sentencing court's oral pronouncement is ambiguous on the issue of Henderson's eligibility to participate in the programs, the State attempts to argue that we can infer an affirmative

determination of ineligibility from the oral pronouncement. The State points to two aspects of the oral pronouncement, but both are unavailing.

¶35 First, the State directs us to the sentencing court's remarks that Henderson had been convicted of a "serious" offense, and that there were "aggravating factors." It is true that a sentencing court may consider the seriousness of the offense when exercising its discretion on whether to declare a defendant eligible to participate in programming. *Steele*, 246 Wis. 2d 744, ¶11. But the converse is not true—a sentencing court is not required to declare a defendant ineligible if the court considers an offense to have been serious. Instead, the sentencing court is required to exercise its discretion on the issue of the defendant's eligibility to participate, and the sentencing court did not do so here.

¶36 Second, the State points to the fact that the sentencing court ordered Henderson to participate in sex offender programming, but did not order him to participate in substance abuse programming. According to the State, "[b]y only ordering sex offender treatment, the court's intent [that he be ineligible for the other programs] is clear." We disagree. As the circuit court found, the sentencing court did not consider Henderson's eligibility to participate in the substance abuse or challenge incarceration programs at all, perhaps because the sentencing court was operating under a misunderstanding that he was statutorily ineligible for those programs. Again, the sentencing court's failure to declare him eligible to participate in those programs is not the same as an affirmative exercise of discretion that he is ineligible.

¶37 Finally, separate and apart from its argument that we can infer an affirmative determination of ineligibility from the sentencing court's oral

17

pronouncement, the State argues that Henderson forfeited his alternative argument by not raising it in the circuit court. We disagree. During the circuit court proceedings, Henderson's counsel argued that the sentencing court's silence on the programs and its other comments at sentencing could not be "construed as an affirmative statement that [the court] didn't want [Henderson] to get into substance abuse treatment." Then, after the circuit court concluded that the sentencing court had not made Henderson eligible to participate in the programs, his counsel asked the circuit court to exercise its discretion to declare him eligible in the first instance. This is not a situation in which a ruling in Henderson's favor would blindside the circuit court or the State with a new argument on appeal. *See State v. Ndina*, 2009 WI 21, ¶30, 315 Wis. 2d 653, 761 N.W.2d 612 (discussing purposes of the forfeiture rule); *State v. Kaczmarski*, 2009 WI App 117, ¶7, 320 Wis. 2d 811, 722 N.W.2d 702 ("Forfeiture is a rule of judicial administration, and whether we apply the rule is a matter addressed to our discretion.").

¶38 We therefore conclude that, although the sentencing court did not determine that Henderson was eligible to participate in the substance abuse and challenge incarceration programs, it also did not determine that he was ineligible to participate in the programs. Under the circumstances, the judgment of conviction should not have been amended to reflect that he was ineligible to participate in the programs, and we remand with instructions to vacate the amended judgment. On remand, the circuit court should conduct any necessary proceedings and exercise its discretion to determine whether to declare Henderson eligible to participate in the substance abuse and challenge incarceration programs, and his judgment of conviction should be amended, if necessary, to reflect the court's exercise of discretion on that issue.

*By the Court.*—Judgment and order reversed and cause remanded with directions.

Not recommended for publication in the official reports.